COLORADO INTERSTATE GAS COMPANY and NORTHERN NATURAL GAS COMPANY, a division of Enron Corp., *Petitioners-Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF MORTON COUNTY, KANSAS, and THE BOARD OF COUNTY COMMISSIONERS OF PRATT COUNTY, KANSAS, *Appellees.*

No. 64,701

IN THE MATTER OF THE APPEAL OF THE BOARD OF COUNTY COMMISSIONERS OF MEADE COUNTY, KANSAS, FROM A CERTIFICATION OF ASSESSED VALUATION BY THE DIRECTOR OF PROPERTY VALUATION.

(802 P.2d 584)

Opinion filed December 7, 1990.

*Richard D. Greene*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Mark A. Ohlsen*, of the same firm, *Karen Pauley*, of Colorado Interstate Gas Company, of Colorado Springs, Colorado, and *E. Chris Kaitson*, of Enron Interstate Pipelines, of Houston, Texas, were with him on the briefs for petitioners/appellants.

*Bruce F. Landeck* and *Janice S. Martin*, of Bennett, Lytle, Wetzler, Winn & Martin, of Prairie Village, argued the cause and were on the briefs for intervenor/appellant Panhandle Eastern Pipe Line Company.

*Benjamin James Neill*, of Perry and Hamill, of Overland Park, argued the cause, and *Linda Ann Terrill* and *Catherine Moir Walberg*, of the same

firm, and *Darrel E. Johnson*, Morton County Counselor, were with him on the brief for appellees Boards of County Commissioners of Meade, Morton, and Pratt Counties.

The opinion of the court was delivered by

MCFARLAND, J.: In this consolidated appeal, appellants Colorado Interstate Gas Company, Northern Natural Gas Company, and Panhandle Eastern Pipe Line Company appeal from the decision of the State Board of Tax Appeals (BOTA) reversing the determination of the Director of Property Valuation (PVD) that stored natural gas belonging to appellants constituted merchants' and manufacturers' inventory and was thus exempt from ad valorem taxation pursuant to Article 11, § 1 of the Kansas Constitution. The appellees are the Boards of County Commissioners of Meade, Morton, and Pratt Counties who had appealed the PVD's decision to BOTA.

Before turning to the issues, a brief background statement is appropriate. The appellants are public utilities operating interstate natural gas pipelines and are regulated by the Federal Energy Regulatory Commission. They buy gas at the wellhead, in the field, or at plant outlets for transportation and sale to local distribution companies. The level of production of natural gas remains relatively constant throughout the year, but the demand for the product is much higher in the cold weather months. As a result, appellants buy more gas during the warm weather months than their markets can immediately absorb. The surplus gas is regularly and routinely placed in underground storage facilities to await its sale during the periods of greater demand. Such storage facilities are authorized by the Underground Storage of Natural Gas Act, K.S.A. 55-1201 *et seq.* Such facilities, as pertinent herein, exist as follows:

1. Colorado Interstate in Morton County;
2. Northern Natural Gas in Pratt County; and
3. Panhandle Eastern in Meade County.

The PVD annually determines the fair market value of public utility property, both real and personal, tangible and intangible, and apportions the assessed valuation among the involved taxing units (K.S.A. 79-5a01 *et seq.*). The PVD determined public utilities' stored natural gas was merchants' or manufacturers' inven-

tory under Article 11, § 1 of the Kansas Constitution and its implementing statute and, accordingly, was exempt from ad valorem taxes. The fair market value of such property was not included in the PVD's assessment of the property owned by said public utilities and this resulted in lower valuations being certified by the PVD to the respective counties herein. The counties appealed to BOTA, which reversed the PVD as to the exempt status of the stored natural gas and directed that the PVD recompute the assessed valuations of property owned by each of the public utilities and certify the new figures to the taxing districts involved herein. The public utilities appeal from said order of BOTA.

The primary issue is the proper interpretation of the constitutional amendment involved. More specifically, does the natural gas herein purchased for resale by the appellant public utilities in the ordinary course of their business come within the merchants' and manufacturers' inventory exemption from ad valorem taxation?

By virtue of the rationale expressed by BOTA in denying the exemption, it is particularly important to state the history of the amendment and the events leading to this litigation.

In November 1986, Kansas voters approved an amendment to Article 11, § 1 of the Kansas Constitution. The amendment permitted, *inter alia*, a new exemption from property taxation for "merchant's and manufacturer's inventories." The amendment provides, in pertinent part:

"(2) All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, farm machinery and equipment, merchant's and manufacturer's inventories and livestock and all household goods and personal effects not used for the production of income, shall be exempted from property taxation." L. 1985, ch. 364, § 1.

In 1988, the Kansas Legislature enacted legislation, codified at K.S.A. 1988 Supp. 79-201m, concerning the exemption, as follows:

"To the extent herein specified, merchants' and manufacturers' inventory shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas.

"As used in this section:

(a) 'Merchant' means and includes every person, company or corporation who shall own or hold, subject to their control, any tangible personal prop-

erty within this state which shall have been purchased for resale without modification or change in form or substance, and without any intervening use;

(b) 'manufacturer' means and includes every person, company or corporation who is engaged in the business of transforming, refining or combining materials and labor to convert tangible personal property from one form to another including packaging; and

(c) 'inventory' means and includes those items of tangible personal property that: (1) Are held for sale in the ordinary course of business (finished goods); (2) are in process of production for such sale (work in process); or (3) are to be consumed either directly or indirectly in the production of finished goods (raw materials and supplies). Assets subject to depreciation or cost recovery accounting for federal income tax purposes shall not be classified as inventory. A depreciable asset that is retired from regular use and held for sale or as standby or as surplus equipment shall not be classified as inventory.

"The provisions of this section shall apply to all taxable years commencing after December 31, 1988."

These definitions were expressly intended to conform with general accounting standards, income tax definitions, Internal Revenue Service holdings and regulations, and other statutes.

In December 1988, Terry Hamblin, then Director of Property Valuation for the State of Kansas, attended a meeting of utility tax personnel in Kansas City. While there, a number of attendees argued that they were entitled to the inventory tax exemption. Hamblin took the issue under advisement and subsequently decided that stored natural gas qualified for the exemption. He based his decision on the "plain and unambiguous" statutory language that "operated to grant the exemption."

On March 28, 1989, Panhandle Eastern sent a letter to the PVD requesting that the underground gas stored in Meade County be declared exempt as merchants' and manufacturers' inventory for the tax year 1989.

On April 20, 1989, the PVD issued a memorandum to all public utility companies. The memorandum discussed the exempt status of inventories. It advised companies to submit requests defining "exempt" accounts and "detailing why it should be considered as 'inventory'."

On July 10, 1989, in response to a request from Mr. Hamblin, the Kansas Attorney General issued Op. No. 89-85 which ad-

dressed the classification amendment, the Kansas Constitution, and certain exemptions found in the Constitution. The opinion found statutory and constitutional support for the exemption of stored gas. The opinion concluded:

"Further, subsequent enactment of K.S.A. 1988 Supp. 79-201m is indicative of legislative intent to include the type of property in question as merchants' or manufacturers' inventory. We have found nothing in recorded legislative history to evidence a contrary intent. Thus, your interpretation appears to coincide with commonly held notions of what constitutes merchants' or manufacturers' inventory for purposes of exemption pursuant to the Kansas Constitution. We find nothing in article 11, section 1 which would preclude personal property of a public utility from being considered merchants' or manufacturers' inventory entitled to exemption from taxation."

In reversing the allowance of the exempton by the PVD, BOTA held that public utilities were not merchants or manufacturers, and, hence, not entitled to the exemption granted to merchants' and manufacturers' inventories. BOTA accepted the PVD's determination that the appellants' stored natural gas constitutes inventories. The stored natural gas clearly comes within the commonly understood meaning of "inventory" and the statutory definition thereof set forth in K.S.A. 1988 Supp. 79-201m(c). As an alternative position, appellees contend a portion of the stored natural gas cannot be properly classified as inventory. This claim will be discussed later in the opinion. The primary issue in the appeal is whether or not public utilities are included within the term "merchants' and manufacturers'."

Before proceeding further, it is appropriate to emphasize the scope of the litigation before us. The constitutional amendment granting the exemption at issue expressly provides that it "shall govern assessment and taxation of property on or after January 1, 1989." The determination by the PVD and the order of BOTA concern the appropriate 1989 valuations of the public utilities' property based upon the constitutional amendment and the definitions contained in K.S.A. 1988 Supp. 79-201m. The BOTA decisions herein were filed on December 6 and 7, 1989. On December 8, 1989, the Kansas Legislature passed House Bill No. 2004, which amended K.S.A. 79-201m by adding:

"(b) The provisions of this section shall not apply to any tangible personal property of a public utility as defined by K.S.A. 79-5a01, and amendments thereto."

The bill was signed by the governor on December 12, 1989. For some inscrutable reason, the parties herein make no reference to this amendment to K.S.A. 79-201m. There is nothing available in the legislative history of House Bill No. 2004 to indicate what relationship, if any, its introduction has to the BOTA litigation herein. Under the circumstances, the validity of the December 12, 1989, amendment to K.S.A. 79-201m is not before us.

The portion of the 1986 constitutional amendment to Article 11, § 1 of the Kansas Constitution before us is clearly self-executing. The exemptions are granted by the amendment itself as opposed to empowering the legislature to enact legislation in the subject area. Examples of constitutional amendments which are not self-executing are Article 15 § 3a (bingo); 15 § 3b (parimutuel wagering); 15 § 3c (state-owned lottery); and 15 § 10 (intoxicating liquors). A good discussion of self-executing vs. not self-executing constitutional provisions is contained in 16 Am. Jur. 2d, Constitutional Law § 139 *et seq.* commencing on page 510.

"The rule is that a self-executing provision of the constitution does not necessarily exhaust legislative power on the subject, but any legislation must be in harmony with the constitution and further the exercise of constitutional right to make it more available. Thus, even in the case of a constitutional provision which is self-executing, the legislature may enact legislation to facilitate the exercise of the powers directly granted by the constitution; legislation may be enacted to facilitate the operation of such a provision, prescribe a practice to be used for its enforcement, provide a convenient remedy for the protection of the rights secured or the determination thereof, or place reasonable safeguards around the exercise of the right. And, even though a provision states that it is self-executing, some legislative action may be necessary to effectuate its purposes. But legislative authority to provide the method of exercising a constitutional power exists only where the constitutional provisions themselves do not provide the manner and means and methods for executing the powers therein conferred. Procedure prescribed in a self-executing provision must be followed to the exclusion of that prescribed by statute, and failure to comply with the provisions of a statute which differ from those in the constitutional provision is not a defect.

"It is clear that legislation which would defeat or even restrict a self-executing mandate of the constitution is beyond the power of the legislature. Also, the legislature is neither required nor permitted to enact laws purporting to confer rights in excess of and different from those contemplated by the constitution. A liability imposed by a self-executing provision is

absolute and not subject to legislative enlargement or lessening or restriction as to manner of enforcement."

See also Annot., 4 A.L.R.2d 744 concerning the authority of the legislature relative to self-executing tax exemption.

Some rules of constitutional construction need to be stated at this point. In *Board of Wyandotte County Comm'rs v. Kansas Ave. Properties*, 246 Kan. 161, 786 P.2d 1141 (1990), we held:

"In ascertaining the meaning of a constitutional provision, the primary duty of the courts is to look to the intention of the makers and adopters of that provision." Syl. ¶ 2.

"In interpreting and construing the constitutional amendment, the court must examine the language used and consider it in connection with the general surrounding facts and circumstances that cause the amendment to be submitted." Syl. ¶ 3.

A constitutional provision is not to be narrowly or technically construed, but its language should be interpreted to mean what the words imply to men of common understanding. *State, ex rel., v. Highwood Service, Inc.*, 205 Kan. 821, Syl. ¶ 4, 473 P.2d 97 (1970). A constitution should not be interpreted in any refined or subtle sense, but should be held to mean what the words imply to the common understanding of men. *State v. Sessions*, 84 Kan. 856, Syl. ¶ 1, 115 Pac. 641 (1911). When interpreting the constitution, each word must be given due force and appropriate meaning. *State, ex rel., v. Hines*, 163 Kan. 300, 304, 182 P.2d 865 (1947).

Realistically speaking, it is highly unlikely that many 1986 Kansas voters spent much time meditating on whether public utilities could come within the term "merchants or manufacturers." The test is, however, what meaning people of common understanding would give to the words in question.

In *Campbell v. City of Anthony*, 40 Kan. 652, 20 Pac. 492 (1887), this court was concerned with whether a lumber dealer was a merchant or retailer and thus required by a city ordinance to buy a license. We stated:

"A merchant is defined to be 'one who traffics or carries on trade; one who buys goods to sell again; one who is engaged in the purchase and sale of goods.' A retailer is defined to be 'one who sells goods by small quantities, or parcels.' 'Goods,' as used in this definition, includes wares, commodities and chattels. We have no doubt but that a lumber dealer is included in the ordinary signification of both a merchant and retailer. In the case of

*City of Newton v. Atchison*, 31 Kan. 151, which was sharply contested, elaborately argued by counsel, and thoroughly considered by the court, a hardware dealer was confessedly included within the general term of merchant." 40 Kan. at 654.

Webster's New Collegiate Dictionary 719 (1977), defines "merchant" as "a buyer and seller of commodities for profit." This appears to be consistent with other dictionary definitions and general understanding of the term. K.S.A. 1988 Supp. 79-201m(a), in defining the constitutional use of 'merchant' in the exemption, contains a more elaborate definition but is in keeping with the dictionary definition, as follows:

"(a) 'Merchant' means and includes every person; company or corporation who shall own or hold, subject to their control, any tangible personal property within this state which shall have been purchased for resale without modification or change in form or substance, and without any intervening use."

The appellant companies are clearly and undisputably in the business of buying and selling natural gas. Severed natural gas is, obviously, tangible personal property. So it would appear quite clear that the public utilities herein are merchants within the constitutional amendment.

BOTA's position to the contrary may be summarized as being that no public utility can be a merchant or manufacturer. To reach this conclusion, BOTA climbs onto some very thin branches. It stresses the legislative development of the amendment. Particular emphasis is placed upon the minutes of the Senate Committee on Assessment and Taxation relative to 1985 Senate Concurrent Resolution No. 1616, wherein it was stated that under the proposed constitutional amendment "public utilities would continue to be taxed as they were at the present." Reference is made to the fact that the PVD testified that such would be the case. The problem with this argument is that Senate Concurrent Resolution 1616 contained no exemption for merchants' and manufacturers' inventories. This exemption came in through 1985 House Concurrent Resolution 5018.

BOTA also relied on the fact that, prior to the amendment, inventories of public utilities were assessed under K.S.A. 79-5a01 *et seq.* rather than as merchants' inventories under K.S.A. 79-1001 *et seq.* (Ensley 1984) and concluded, therefore, public util-

ities could not be merchants under the constitutional amendment. However, the statutes relative to merchants (K.S.A. 79-1001 *et seq.* [Ensley 1984]) were repealed contemporaneously with the implementation of the classification/exemption amendment. Further, the public utilities had never conceded that they were not merchants under the prior law.

Various legislators filed affidavits in the BOTA proceedings herein to the effect that the proposed amendment was not intended to alter the assessment and taxation of inventories owned by public utilities. The 1989 amendment to K.S.A. 79-201m clearly supports this position. The problem here is that in enacting the proposed constitutional amendment the legislature determined the size of the mesh in the net and the requisite number of voters approved the mesh size. The mesh size is thus fixed in the constitution. The fact that unintended varieties of fish may pass through the mesh has little bearing on anything.

Under the circumstances, this court can only apply the clear language of the amendment. As we said in *Harris v. Shanahan*, 192 Kan. 183, 196, 387 P.2d 771 (1963), in discussing statutory construction:

" '. . . Errors plainly clerical in character, mere inadvertences of terminology, and other similar inaccuracies or deficiencies will be disregarded or corrected where the intention of the legislature is plain and unmistakable. But the court cannot delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, *if it did not in fact do it, under any reasonable interpretation of the language used,* the defect is one which the legislature alone can correct.' " (Emphasis in original.) (Quoting *Russell v. Cogswell*, 151 Kan. 793, 795, 101 P.2d 361 [1940].)

In the case before us, we are primarily concerned with the amendment itself and what persons of common understanding would imply from the words used therein.

Further, the inclusion of public utilities in the merchants' and manufacturers' inventory exemption is not so unreasonable as to demand a contrary interpretation. There was testimony before BOTA to the effect no other state taxed natural gas stored by public utilities for resale. Public policy favoring the storage of natural gas is stated in K.S.A. 55-1202 as follows:

"The underground storage of natural gas which promotes conservation

thereof, which permits the building of reserves for orderly withdrawal in periods of peak demand, which makes more readily available our natural gas resources to the domestic, commercial and industrial consumers of this state, and which provides a better year-round market to the various gas fields, promotes the public interest and welfare of this state."

We conclude that: (1) the PVD correctly interpreted the constitutional exemption for merchants' and manufacturers' inventories in determining that public utilities herein were entitled to come within such exemption; and (2) BOTA erred in reversing the PVD on this issue.

By virtue of this conclusion, we need not consider the appellants' claim that BOTA's interpretation of the amendment and its definitional statutes constituted a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

As an alternative position, the appellees argue that the PVD incorrectly determined the extent of the exemption by: (1) including stored gas classified as "non-current" gas as inventory; and (2) in the method used to compute the exemption. Highly technical arguments are raised in these fallback positions and little would be gained by their lengthy discussion herein.

We have long held that matters of valuation and taxation are administrative in character, and a determination of the administrative agency acting within its legislative power, when fairly and honestly made, is final, and courts will not interfere to usurp the agency's function or substitute their judgment for that of the agency. *Mobil Pipeline Co. v. Rohmiller*, 214 Kan. 905, 917, 522 P.2d 923 (1974). Courts will not substitute their judgment for that of the assessing authority in the absence of fraud or conduct so oppressive, arbitrary, or capricious as to amount to constructive fraud. *Cities Service Oil Co. v. Murphy*, 202 Kan. 282, 289, 447 P.2d 791 (1968).

It is sufficient to say we have carefully considered the respective arguments of the parties and find no arbitrary, unreasonable, or capricious conduct by the PVD in regard to these fallback contentions.

The order of the State Board of Tax Appeals reversing the Director of Property Valuation is reversed.