No. 82,658

KANSAS ENTERPRISES, INC., d/b/a AAA RENT-ALL EQUIPMENT SALES AND SERVICE AND AAA EQUIPMENT AND SUPPLY, *Appellant*, v. GERALD C. FRANTZ, SEDGWICK COUNTY APPRAISER, AND SEDGWICK COUNTY, KANSAS, BOARD OF COUNTY COMMISSIONERS in their official capacities, *Appellees*.

(6 P.3d 857)

Opinion filed June 9, 2000.

*Donald E. Hill*, of Martin, Churchill, Blair, Hill, Cole & Hollander, Chartered, of Wichita, argued the cause and was on the brief for appellant.

*Clarence D. Holeman*, assistant county counselor, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

DAVIS, J.: Kansas Enterprises, Inc., (taxpayer) paid its 1994 ad valorem personal property tax under protest. It claimed that its property was exempt as merchant's inventory under Article 11 of the Kansas Constitution and K.S.A. 79-201m. After a full hearing, BOTA denied the exemption. The district court affirmed BOTA. For reasons set forth in this opinion, we affirm.

The facts are not in dispute. The taxpayer is a Kansas corporation doing business as AAA Rent-All Equipment Sales and Service and AAA Equipment and Supply. The taxpayer owns and operates four locations in Wichita for the rental and sales of various types of personal property. The taxpayer's business consists of owning an inventory of personal property which it makes available to the public for sale and rental in the ordinary course of business. Virtually all of its inventory is sold to the public and 70% to 80% of its business is done on open accounts, which extend credit to business customers.

The personal property claimed as exempt merchant's inventory consists of general inventory and construction equipment. General inventory includes such items as ladders, sawblades, small power tools, lawnmowers, rototillers, power rakes, and hand tools, which are sold and rented to homeowners, light and heavy construction contractors, and other businesses. The taxpayer's construction inventory consists of expensive equipment such as Snorkel-Economy aerial work platforms, Scat-Trak loaders, backhoes, small engine equipment (pumps, generators, welders, and compactors), forklifts, air compressors, and large electric tools, which are sold and rented to light and heavy construction contractors and to other businesses.

The taxpayer's business has changed dramatically during the past 15 years. In the past, the taxpayer rented primarily to homeowners but beginning in the mid 1980's, its customers demanded newer equipment and began to look to the taxpayer as a source from which they could purchase both new and used equipment. Since that time, rental and sales to homeowners have diminished; sales and rentals to construction contractors have increased. The tax-

payer has evolved into a large full-scale equipment sale, rental, and service business providing services to customers within a 100-mile radius of Wichita.

The industry which the taxpayer serves has also changed dramatically. Construction equipment dealers which used to only sell new equipment now rent a substantial portion of their inventory. Construction rental dealers which used to only rent equipment now sell a substantial portion of their inventory. The taxpayer, as well as similar businesses, sell outright to some customers; however, it is more common for sales to be made after the construction equipment has been rented for a period of time. This rental period allows the customer to determine if the equipment meets their needs and provides the customer a method of financing the purchase. Rental payments made before the purchase reduces the ultimate purchase price.

The taxpayer is an exclusive dealer for Snorkel-Economy high-reach equipment in 54 counties in Southern Kansas. As an exclusive dealer, the taxpayer is the only business in the territory authorized to sell new Snorkel-Economy equipment, perform repair and service, stock and sell parts, perform warranty, and rent high-reach equipment. It also has a dealer's agreement with Trak International for the Scat-Trak skid steer loaders and Sky-Trak fork-lifts for the sale, rental, and servicing of this equipment. In 1993, the taxpayer was the number two dealer in the United States for sales of Scat-Trak equipment. It employs five full-time commissioned salespersons and a sales manager whose primary duty is to sell inventory.

Over the years, the taxpayer has experienced substantial increases in sales of general inventory and construction equipment inventory. On any given day, 16% of the value at cost of their inventory is out on rental contracts while the remaining 84% is physically located at the store. The taxpayer's sales for fiscal years 1988 through 1994 were as follows:

| Fiscal Year Ending | 11/30/88 | $1,219,022 |
|---|---|---|
| FYE | 11/30/89 | 724,163 |
| FYE | 11/30/90 | 765,445 |

| FYE | 11/30/91 | 756,780 |
| FYE | 11/30/92 | 891,933 |
| FYE | 11/30/93 | 1,435,029 |
| FYE 11 months ending | 10/31/94 | 1,869,794 |

At the present time, sales now constitute a larger portion of total revenue than equipment rentals. The taxpayer presented the following evidence regarding its income source changes from 1987 to 1995:

|  | 11/30/87 | 11/30/94 | 8/31/95 |
|---|---|---|---|
| Sales: | $950,000 | $2,000,000 | $1,800,000 |
| Equip Rentals | $2,050,000 | $2,000,000 | $1,550,000 |

The taxpayer claims depreciation on its federal income tax return for its general inventory and construction equipment inventory.

The taxpayer applied for exemption in the tax year 1994, claiming that its equipment qualified as merchant's inventory and was therefore exempt from personal property taxes under K.S.A. 79-201m. In order to qualify for the merchants' inventory exemption the taxpayer must show that it is a "merchant" and that its personal property qualifies as "inventory" under the provisions of K.S.A. 79-201m.

The statute defines the term "merchant" to include

"every person, company or corporation who shall own or hold, subject to their control, any tangible personal property within this state which shall have been purchased primarily for resale in the ordinary course of business without modification or change in form or substance, and without any intervening use, except that, an incidental use, including but not limited to the rental or lease of any such property, shall not be deemed to be an intervening use." K.S.A. 79-201m(a)(1).

The statute defines inventory as

"those items of tangible personal property that: (1) Are primarily held for sale in the ordinary course of business (finished goods); (2) are in process of production for such sale (work in process); or (3) are to be consumed either directly or indirectly in the production of finished goods (raw materials and supplies). A capital asset subject to depreciation or cost recovery accounting for federal income tax purposes that is retired from regular use by its owner and held for sale or as standby or surplus equipment by such owner shall not be classified as inventory." K.S.A. 79-201m(a)(3).

BOTA concluded that the taxpayer was a merchant under the provisions of K.S.A. 79-201m but failed to present sufficient evidence to establish that the personal property for which the exemption was claimed was "purchased primarily for resale in the ordinary course of business . . . without any intervening use." K.S.A. 79-201m(a)(1). BOTA determined that the taxpayer had therefore failed to meet its burden of establishing that the subject personal property was inventory as that term is defined in K.S.A. 79-201m.

The taxpayer then filed an appeal with the district court. In its memorandum decision, the district court concluded that the taxpayer was not a "merchant" but otherwise affirmed BOTA's decision denying the exemption. The taxpayer appealed to the Court of Appeals, and we transferred jurisdiction under our own motion based upon K.S.A. 20-3018(c).

The taxpayer argues: (1) BOTA and the district court erred in finding that it had failed to meet its burden of proof to show that it held its inventory primarily for sale rather than rent. In the course of this argument, the taxpayer contends that (a) it is entitled to the exemption because the clear and unambiguous language of K.S.A. 79-201m establishes that any rental of its personal property before sale is always an incidental use and (b) the rental of its personal property is in fact a sale under the statute. In the alternative, the taxpayer argues: (2) Even if the property which is immediately being rented does not qualify as merchants' inventory, personal property physically located in the store on January 1 should so qualify. As another alternative the taxpayer argues: (3) If K.S.A. 79-201m is interpreted not to allow the exemption, the statute is unconstitutional because (a) the statute alters a self-executing Kansas constitutional provision and (b) the statute is vague. Finally, the taxpayer argues: (4) The tax imposed upon its personal property is neither uniform nor equal based upon taxes imposed on other companies engaged in similar businesses in the Wichita community.

(1) The taxpayer's failure to meet its burden of proof.

BOTA found that the taxpayer failed to meet its burden to show that the personal property it claimed as exempt was "primarily held for sale in the ordinary course of business" and, thus, qualified as

inventory under K.S.A. 79-201m(a)(3). The district court affirmed BOTA on this issue and also found that the taxpayer had failed to prove that it met the definition of a "merchant" under K.S.A. 79-201m(a)(1), with regard to property claimed as exempt.

Our standard of review is provided for under K.S.A. 74-2426(c), which states that actions by BOTA are subject to review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions. Under K.S.A. 77-621(c), this court may grant relief if it determines:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or impled by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

## We have held, regarding exemptions:

" 'Taxation is the rule, and exemption from taxation the exception under the Kansas Constitution and statutes. [Citation omitted.] Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exemption, and all doubts are to be resolved against exemption. [Citation omitted.] Where the language of a statute, in particular, is relied upon as creating an exemption from taxation, it must be strictly construed against the party claiming the exemption. . . . [Citation omitted.] Strict construction, however, does not warrant unreasonable construction. [Citation omitted.]' [Citation omitted.]" *Board of Sedgwick County Comm'rs v. Action Rent to Own, Inc.*, 266 Kan. 293, 301, 969 P.2d 844 (1998).

As stated above, in order to qualify for the exemption for merchants' inventory, the taxpayer must show that it is a "merchant" and that it

"own[s] or hold[s] . . . any tangible personal property within this state which shall have been purchased primarily for resale in the ordinary course of business without modification or change in the form or substance, and without any intervening use, except that, an incidental use, including but not limited to the rental or lease of any such property, shall not be deemed to be an intervening use." K.S.A. 79-201m(a)(1).

The taxpayer must also show that the personal property is "inventory," *i.e.*, that the personal property claimed as exempt is "primarily held for sale in the ordinary course of business." K.S.A. 79-201m(a)(3).

The taxpayer admittedly holds its tangible personal property both for sale and for rent. Its company records demonstrated that specific personal property items were sold without any rental and that all of the subject personal property was always "for sale." Based upon testimony that some of the taxpayer's personal property was sold without any rental, BOTA concluded that the taxpayer was a "merchant" under K.S.A. 79-201m(a)(1). BOTA found that the word "any" used in the definition of "merchant" was very broad. Thus, according to BOTA, "if a Taxpayer shall own or hold any—even as few as one (1) tangible personal property item which satisfies the requirements of K.S.A. 1994 Supp. 79-201m(a), then, for the purposes of said statute, said Taxpayer is a merchant."

While it is possible for one claiming an exemption to be a merchant with regard to some of its personal property and a nonmerchant with regard to other personal property as in the case of a business that engages in sales of certain personal property and rental only of other personal property, a taxpayer claiming an exemption under the statute cannot at the same time be a merchant with reference to the property claimed exempt and have that same property not be inventory. The definitions of "merchant" and "inventory" under K.S.A. 79-201m are intertwined and share a common element. A merchant is one "who shall own or hold . . . any tangible personal property . . . which shall have been purchased *primarily for resale in the ordinary course of business.*" K.S.A 79-201m(a)(1). "Inventory" means "those items of tangible personal property that . . . [a]re *primarily held for sale in the ordinary course of business.*" K.S.A. 79-201(a)(3).

A taxpayer found to be a merchant within the definition in 79-201m owns or holds its tangible personal property which has "been purchased primarily for resale in the ordinary course of business" and its inventory (tangible personal property) is "primarily held for sale in the ordinary course of business" consistent with the definition of inventory in K.S.A. 79-201m(a)(3). Under the statute, with reference to the property claimed as exempt, a taxpayer cannot be classified as a merchant for the claimed exempt property and not be entitled to the exemption. Thus, to the extent that BOTA concluded that the taxpayer was a merchant for the property claimed as exempt and yet not entitled to the exemption because the property did not fit the definition of inventory, it was in error. Ultimately, however, BOTA determined that with reference to the property claimed as exempt, the taxpayer did not meet its burden in proving that "those items of tangible personal property" were "primarily held for sale in the ordinary course of business."

The question, therefore, is whether the taxpayer met its burden to show that it qualifies as a "merchant" under K.S.A. 79-201m and thus its "inventory" is entitled to an exemption. This court recently examined the merchants' inventory exemption under K.S.A. 79-201m in *Action Rent to Own, Inc.*, 266 Kan. at 300-304. Our opinion in *Action* is dispositive of several of the points raised before BOTA and the trial court.

In *Action*, we considered whether a rent-to-own business could qualify for the merchants' inventory exemption under K.S.A. 79-201m. We examined the legislative history of the statute and made determinations regarding its interpretation. We noted that originally, K.S.A. 79-201m stated that assets subject to depreciation could not be "inventory." However, we stated that the 1989 amendment allowed capital assets subject to depreciation but held primarily for sale to be classified as "inventory." 266 Kan. at 304. We also considered the effect of the language in the definition of "merchant" which modified the term "intervening use." We noted that prior to the 1989 amendment, any intervening use destroyed the property's designation as inventory. However, the amendment added the provision that "an incidental use, including but not limited to the rental or lease of any such property, shall not be deemed

to be an intervening use." K.S.A. 79-201m(a)(1). Analyzing the legislative history, we stated that the clear purpose of this amendment was

"to protect the inventory exemption of large equipment businesses that temporarily rent out their equipment for demonstration purposes prior to sale. At the same time, the legislature sought to construct the statute as to not exempt the inventory of rental businesses, such as video rental stores and car rental agencies." 266 Kan. at 303.

We also stated: "The committee minutes clearly indicate that the legislature did not intend to expand the exemption to include assets that are *rented* in the ordinary course of business." 266 Kan. at 304.

The resolution of this case hinges on where the taxpayer's business falls within this spectrum. The taxpayer alleges that its evidence shows it rented its property "for demonstration purposes" and, thus, is squarely within the intent of the statute. However, it is clear from the undisputed evidence that the taxpayer often rented certain items numerous times over the course of several years. However, it is also clear that the taxpayer did sell its inventory, rather than simply renting it until its useful life expired and then getting rid of it. Therefore, the taxpayer is not exactly in the regular rental business. Rather, the taxpayer is somewhere in the middle of these extremes.

(a) The taxpayer's argument that it is entitled to the exemption because rental is always an incidental use.

The taxpayer argues that under K.S.A. 79-201m, the rental of inventory is never an "intervening use" but instead is always "incidental." The taxpayer bases this argument on the language of the definition of "merchant" which states "an incidental use, including but not limited to the rental or lease of any such property, shall not be deemed to be an intervening use." K.S.A. 79-201m(a)(1). According to the taxpayer, this means that a rental is always an incidental use and never an intervening one, no matter what the duration or the number of times the property is rented. This is a strained interpretation and is inconsistent with the legislative intent of the statute, which is to deny the exemption to regular rental

businesses. A fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. See *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). An interpretation more consistent with legislative history is that the rental or lease of property shall not be considered an intervening use where such rental or lease is "incidental" to the holding of the property for sale.

Similarly, our opinion in *Action* makes clear that the legislature did not intend to expand the exemption in K.S.A. 79-201m to include assets that are rented in the ordinary course of business. 266 Kan. at 304. This undermines the taxpayer's argument that the rental of property is always an incidental use. Our decision and the legislative history discussed in *Action* establish otherwise. See 266 Kan. at 303-04.

(b) The taxpayer's contention that its rental of property constitutes a "sale" under the statute.

The taxpayer also makes the novel contention that its "rental transactions" should be classified as "sales." In support of this notion, the taxpayer cites *Dixie Rents, Inc. v. City of Memphis*, 594 S.W.2d 397 (Tenn. App. 1979). In that case, the Tennessee Court of Appeals interpreted the Tennessee Constitution to hold that goods held for rent should be exempt in the same manner as goods held for sale, finding that "[a]ctually, when one reaches the essence of the concept of a lease or rental agreement, it is nothing more than the sale of the right to use a thing for an agreed upon period." 594 S.W.2d at 399. Clearly, the taxpayer's argument is contrary to the legislative intent of K.S.A. 79-201m, which excludes rental businesses from eligibility for the exemption. This argument is devoid of merit.

From the language of the statute and our examination of its legislative history in *Action*, some basic principles can be distilled: The first is that in order to qualify as a "merchant" under the statute, the business must purchase and hold property "primarily for resale," without an intervening use. K.S.A. 79-201m(a)(1). However, the business may rent or lease the property without such rental or lease constituting an intervening use so long as the rental

or lease is "incidental" to the property's main use for sale. The rental of property for demonstration purposes prior to sale is clearly an incidental use. *Action*, 266 Kan. at 303. There is a question, however, as to where the number of rentals cease to become incidental and, instead change the character of the property from that being held "primarily for resale" to that which is "rented in the ordinary course of business." See 266 Kan. at 304.

The problem with the taxpayer's business is that its entire inventory is available for rent or sale. The taxpayer does not segregate its inventory in rental inventory or sale inventory. This means that when the taxpayer purchases an item for inventory, it does not know whether it will sell it during the year or whether it will rent it numerous times before sale.

The treatment this issue has received in other jurisdictions has been inconsistent and is of little value to this analysis because it necessarily depends upon the unique language of each respective statute. In *Eagle Rental, Inc. v. City of Waterville*, 632 A.2d 130 (Me. 1993), the Supreme Court of Maine concluded that businesses which held inventory for both sale or rent qualified for a tax exemption, based on language which held that " '[s]tock in trade, including inventory held for resale by a . . . retail merchant or service establishment' " was exempt. The *Eagle Rental* court noted that the statute did not require that the inventory be held solely for resale and noted that this interpretation was consistent with legislative history which indicated the purpose of the statute was to encourage businesses to move to or remain in Maine. 632 A.2d at 131-32. The Supreme Court of Connecticut reached a similar result in *Tyler Equipment Corporation v. Wallingford*, 212 Conn. 167, 175-76, 561 A.2d 936 (1989).

However, the North Carolina Court of Appeals held differently in *In re Appeal of R.W. Moore Equipment Co.*, 115 N.C. App. 129, 443 S.E. 2d 734 (1994). The court in that case found that the evidence showed the primary use of the property was for rental purposes and, thus, held that even though it was available for sale, it was not exempt. 115 N.C. App. at 132.

Our statute is similar to that in North Carolina in that we require the primary use of the property to be for sale with an incidental

use for renting. This interpretation is also consistent with the legislative intent of K.S.A. 79-201m, which is to make an extremely narrow exception for incidental renting. See Comments of Senator Kerr, Minutes of the Senate committee on Assessment and Taxation (March 2, 1989), quoted in *Action*, 266 Kan. at 303. The difficulty is in quantitatively measuring the use to which property is held. This is an area within BOTA's area of expertise.

BOTA found that while evidence in the record clearly indicated that selling equipment is a substantial portion of the taxpayer's business, the evidence was inconclusive as to whether its property was primarily held for sale in the ordinary course of business. In order to make such a determination, BOTA concluded that the taxpayer

"need[ed] to present evidence which would answer [the following] questions: Are the subject items generally rented once, twice, or ten times before their sale? Are items usually sold to their first renter or their fifth? How long are items out on rental before their ultimate sale?"

BOTA invited the taxpayer to provide additional evidence in regard to the above questions. While the taxpayer did move for reconsideration before BOTA, it did not provide any answers to the above questions. According to its testimony the taxpayer did not keep records that would provide answers to the questions posed by BOTA. Without the benefit of the additional information, BOTA concluded that the taxpayer was not entitled to the exemption.

BOTA's questions referenced its earlier decision in *In the Matter of Application of Dillon Stores for Relief from a Tax Grievance in Sedgwick County, Kansas*, Docket Nos. 93-4695-TG *et al*. In that case, the question was whether a rent-to-own dealer could be granted an exemption. Quoting from that order, BOTA noted:

"Finding that each tax exemption application need be examined on a case-by-case basis, the Board indicated that the following factors were relevant to its decision and need be examined when reviewing a rental company's request for K.S.A. 79-201m tax exemption:

'(1) the age of the inventory which they had available for rent or sale and those which were under contract were generally quite new—in the instant matters [*Dillons*], the units were generally purchased within the prior twelve (12) months;

'(2) the units were on average rented very few times before purchase—in the instant matters [*Dillons*], the units were generally rented slightly more than two (2) times before they were acquired by a customer, and;

'(3) the units generally were rented for a short period before they were acquired by a customer—in the instant matters [*Dillons*], the units were generally rented for less than two (2) years before they were acquired by the customer.'"

The taxpayer argues that BOTA erroneously applied the *Dillon* factors. The taxpayer contends that its business is distinguishable from the businesses in *Dillon* because: (1) The taxpayers in *Dillon* were rent-to-own businesses, while the taxpayer here is not; (2) *Dillon* involved the rent-to-own consumer electronics industry rather than the construction and equipment industry; and (3) the taxpayers in *Dillon* were required to provide customers with quite new inventory, rented only a few times and not for more that 2 years, while the taxpayer here deals with construction equipment which may have more value to a buyer after it has been rented a few times than before it is rented, because of the reduced cost to purchase.

The taxpayer's distinctions may be correct, but its argument misses the point BOTA made by suggesting the *Dillon* factors as a guide to the kind of evidence needed to establish entitlement to the exemption. Even though *Dillon* involved a totally different industry, the principles set forth therein directly addressed the ultimate question which is whether the taxpayer's tangible personal property is "primarily held for sale in the ordinary course of business." See K.S.A. 79-201m(a)(3).

As set forth above, the factors enunciated by BOTA in *Dillon* are particularly relevant in determining whether a company which sells and rents its inventory qualifies for an exemption under K.S.A. 79-201m. A company whose inventory is relatively new and whose inventory is rented very few times prior to purchase, and for only a short time before purchase, is most likely primarily holding the inventory for sale. Conversely, a company with aging inventory which it rents numerous times and sells only after a long time has passed is using the inventory primarily for rental purposes.

The taxpayer in this case failed to present any relevant information of this sort to BOTA, even after BOTA advised the taxpayer

that such information would be needed in order to rule on its request for an exemption. The taxpayer argues that it is unfair for BOTA to require this information because the taxpayer did not keep such information in the normal course of business, and it had no notice that such information was required. We note that the *Dillon* factors are not the exclusive means by which the taxpayer can show that it is entitled to the exemption. The requirement, however, is that the taxpayer actually demonstrate that it is entitled to the exemption, whether through the three *Dillon* factors or some other method.

The taxpayer presented evidence that it sells as well as rents and that its income from sales is marginally greater than its rental income. The problem is that this evidence falls short of showing that the taxpayer's inventory is used primarily for sales and rented only incidentally. While it is clear that the taxpayer does sell some equipment before renting it even once, the fact remains that the same equipment was available for rental and could have been rented numerous times before purchase had it not been purchased at that time. Without information relating to the average length of time equipment is rented prior to sale or other information showing the intent of the taxpayer, it is difficult to conclude that such equipment was being held primarily for sale.

We conclude that BOTA was correct in its conclusion that the evidence presented by the taxpayer failed to conclusively show that the taxpayer was entitled to the exemption. The burden of establishing an exemption from taxation is on the one claiming it. *In re Tax Appeal of Univ. of Kan. School of Medicine*, 266 Kan. 737, 751, 973 P.2d 176 (1999). The taxpayer failed in this burden and, thus, is not entitled to an exemption.

(2) The taxpayer's argument that personal property physically located in the store on January 1, 1994, qualifies as exempt merchant's inventory.

The taxpayer argues that even if BOTA's decision is upheld, its inventory on hand as of January 1, 1994, should be exempt. The taxpayer argues that because this inventory is clearly for sale and not out on rent, it should be classified as inventory.

The taxpayer's argument is without merit. Simply because an item is in the taxpayer's inventory on the date of assessment does not prove that the item is held primarily for sale. It could in fact be held primarily for rental but simply not on rental contract. The ultimate question is the manner in which the property is being held, not its location at the time of assessment.

### (3) The taxpayer's argument that if K.S.A. 79-201m is interpreted not to allow the exemption, the statute is unconstitutional.

As an alternative argument, the taxpayer contends that if K.S.A. 79-201m is interpreted not to allow the exemption, the statute is unconstitutional. The taxpayer argues that the statute is unconstitutional because it is an improper limit on the scope of a self-executing constitutional amendment and also because it is unconstitutionally vague. The taxpayer attempted to present these arguments to BOTA and the district court but BOTA ruled that it did not have jurisdiction to address constitutional issues, and the district court found that addressing those issues was unnecessary.

### (a) The taxpayer's argument that the statute is an improper limit on the scope of a self-executing constitutional amendment.

The taxpayer's argument with regard to K.S.A. 79-201m being an improper limit on the scope of a self-executing constitutional amendment is as follows: (1) The 1986 amendment to Article 11, §1 of the Kansas Constitution exempts merchants' inventory from taxation; (2) this provision is self-executing and thus the legislature may not legislatively define the terms "merchant" or "inventory"; and (3) instead, the plain meaning of the words should be used, and this plain meaning should include inventory simultaneously held for sale and rental purposes.

In *Colorado Interstate Gas Co. v. Board of Morton County Comm'rs*, 247 Kan. 654, 802 P.2d 584 (1990), we discussed the concept of self-executing constitutional amendments in connection with K.S.A. 79-201m. With regard to self-executing constitutional provisions, we quoted 16 Am. Jur. 2d, Constitutional Law § 139 *et seq.*, stating:

" 'The rule is that a self-executing provision of the constitution does not necessarily exhaust legislative power on the subject, but any legislation must be in harmony with the constitution and further the exercise of constitutional right to make it more available. Thus, even in the case of a constitutional provision which is self-executing, the legislature may enact legislation to facilitate the exercise of the powers directly granted by the constitution; legislation may be enacted to facilitate the operation of such a provision, prescribe a practice to be used for its enforcement, provide a convenient remedy for the protection of the rights secured or the determination thereof, or place reasonable safeguards around the exercise of the right. And, even though a provision states that it is self-executing, some legislative action may be necessary to effectuate its purposes. But legislative authority to provide the method of exercising a constitutional power exists only where the constitutional provisions themselves do not provide the manner and means and methods for executing the powers therein conferred. Procedure prescribed in a self-executing provision must be followed to the exclusion of that prescribed by statute, and failure to comply with the provisions of a statute which differ from those in the constitutional provision is not a defect.

'It is clear that legislation which would defeat or even restrict a self-executing mandate of the constitution is beyond the power of the legislature. Also, the legislature is neither required nor permitted to enact laws purporting to confer rights in excess of and different from those contemplated by the constitution. A liability imposed by a self-executing provision is absolute and not subject to legislative enlargement or lessening or restriction as to manner of enforcement.' " 247 Kan. at 659-60.

In *Colorado Interstate Gas*, we held that the 1986 constitutional amendment to Article 11, § 1 of the Kansas Constitution is self-executing. 247 Kan. at 659. Therefore, the legislature does not have the power to restrict its constitutional mandate to exempt merchants' inventories or to adopt a definition of "merchants' inventory" that is inconsistent with the language of the amendment. Instead, the words are to be given the meaning that "the words imply to men of common understanding." *Colorado Interstate Gas*, 247 Kan. at 660; see *State, ex rel., v. Highwood Service, Inc.*, 205 Kan. 821, Syl. ¶ 4, 473 P.2d 97 (1970).

The taxpayer contends that by defining "merchant" and "inventory" to exclude inventory held for rent, the legislature improperly restricted the constitutional mandate granted by Article 11, § 1, and that the terms should instead be held to mean what the words imply to the common understanding of men. The taxpayer argues that the common understanding is that property held simultane-

ously for sale and rent is still included in the term "merchants' inventory."

The taxpayer's argument, however, ignores that fact that in *Colorado Interstate Gas*, we found the definition of "merchant" in K.S.A. 1988 Supp. 79-201m(a) to be consistent with the common understanding of the term. See 247 Kan. at 661. K.S.A. 1988 Supp. 79-201m(a) defined "merchant" as "every person, company or corporation who shall own or hold, subject to their control, any tangible personal property within this state which shall have been purchased for resale without modification or change in form or substance, and without any intervening use." That definition was even more restrictive than the current version of K.S.A. 79-201m because it did not contain a provision excluding an incidental use from being considered an intervening use. Thus, while the taxpayer is correct in that the 1986 amendment is self-executing, the taxpayer's argument that K.S.A. 79-201m is in conflict with the amendment is incorrect. The taxpayer's argument fails.

(b) The taxpayer's argument that the statute is vague.

The taxpayer argues that K.S.A. 79-201m is unconstitutionally vague because it does not give taxpayers a constitutional standard for determining when property held for sale and rental is exempt. The taxpayer asserts that men of common intelligence must guess at what the statute means by the terms "primarily," "incidental," and "intervening."

The standard for determining whether a statute regulating business is unconstitutionally vague is a common-sense determination of fairness. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992). If an ordinary person exercising common sense can understand and comply with the statute, it is constitutional. 251 Kan. at 243.

While it is true that the words "primarily," "incidental," and "intervening" are not defined by the statute, this does not make the statute unconstitutionally vague. The words themselves may be construed according to their plain meaning. Clearly, the statute requires that in order to qualify for an exemption, the business must primarily hold inventory for sale and only incidentally hold

inventory for other purposes including rental. An ordinary person exercising common sense could understand what is necessary to comply with the statute; hence, it is constitutional.

(4) The taxpayer's argument that the tax imposed upon its personal property is neither uniform nor equal based upon taxes imposed on other companies engaged in similar businesses in the Wichita community.

The taxpayer's final argument is that the property should be removed from the tax rolls because Sedgwick County (County) had been inconsistent in its application of the exemption. The taxpayer argues that the County failed to assess taxes on the inventory of the taxpayer's competitors even though they were primarily involved in the same business. The taxpayer contends that the remedy for this unequal assessment is to grant it an exemption.

The County admitted that its monitoring of the taxpayer's competitors had been lax. BOTA specifically found that "the evidence is overwhelming that the instant Taxpayer has been treated substantially different from many of their Sedgwick County counterparts." However, BOTA found that the remedy for this disparate treatment was not to remove the taxpayer's property from the tax rolls but instead to properly assess and tax the competitors.

The taxpayer cites several cases which it claims entitles it to an exemption: *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 127, 734 P.2d 1125 (1987); *Addington v. Board of County Commissioners*, 191 Kan. 528, 531-32, 382 P.2d 315 (1963); *In re Tax Appeal of Andrews*, 18 Kan. App. 2d 311, 851 P.2d 1027, *rev. denied* 253 Kan. 859 (1993). These cases hold that uniformity and equality in valuation and rate of taxation are required by Article 11, § 1 of the Kansas Constitution and that if the valuation of the properties are not uniform and equal, the taxpayer is entitled to relief. See *Greenhaw*, 241 Kan. at 127; *Addington*, 191 Kan. at 531-32; *Andrews*, 18 Kan. App. 2d at 315-16.

However in the case at hand, the valuation and rate of taxation are in fact equal. There is no question that the taxpayer and its competitors are subject to the same valuation and rate. They must all pay taxes on their inventory unless it is held to be "merchants'

inventory." The inequality comes about because the taxpayer has been audited and its claimed exemption disallowed while the County has not done so to its competitors. The taxpayer and its competitors have each been assessed at the same rate for property reported. The problem is that the taxpayer's competitors have not reported their inventory and not been called to account for it. Thus, the problem is not a lack of uniformity and equality in valuation and rate, but rather a lack of uniformity and equality in enforcement. Enforcement is an area that is historically nonuniform, and uniform and equal enforcement is not required by Article 11, § 1. See *Dillon Stores v. Lovelady*, 253 Kan. 274, 279, 855 P.2d 487 (1993).

Affirmed.

ABBOTT, J., not participating.

GARY W. RULON, J., assigned.[1]

---

[1] **REPORTER'S NOTE:** Judge Rulon, Judge of the Kansas Court of Appeals, was appointed to hear case No. 82,658 vice Justice Abbott pursuant to the authority vested in the Supreme Court by K.S.A. 20-3002(c).