No. 96,986

IN THE MATTER OF THE APPEAL OF THE DIRECTOR OF PROPERTY
VALUATION, FROM AN ORDER OF THE BOARD OF TAX APPEALS
EXEMPTING STORED NATURAL GAS FROM PROPERTY
TAXATION.

(161 P.3d 755)

Opinion filed July 13, 2007.

*William E. Waters*, of Property Valuation Division, Kansas Department of Revenue, argued the cause and was on the briefs for appellant.

*C. Michael Lennen*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Robert W. Coykendall*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

*Per Curiam*: This is a tax case involving the exemption of stored natural gas from ad valorem property taxation in Kansas.

The appellees, herein designated the "taxpayers," are 44 non-Kansas municipal utilities, non-Kansas natural gas marketing companies, and non-Kansas public utilities that have contracted for gas storage or deferred delivery with interstate natural gas pipeline companies.

The appellant is Mark S. Beck, the Director of the Property Valuation Division of the Kansas Department of Revenue, herein designated the "PVD," who valued and assessed the stored natural gas for ad valorem taxation against the taxpayers for the years 2004 and 2005 in response to 2004 amendments to K.S.A. 79-5a01, which expanded the definition of "public utility" for ad valorem tax purposes. See L. 2004, ch. 171, sec. 4.

The taxpayers appealed to the Kansas Board of Tax Appeals, herein designated "BOTA" or the "Board," which held that the taxpayers were not public utilities under the new definition contained in K.S.A. 2006 Supp. 79-5a01, and consequently their natural gas was exempt from property taxation as merchants' inventory under K.S.A. 79-201m. Specifically, BOTA reasoned and held that "it would be improper for the Board to find that the taxpayers, who relinquish possession of natural gas to interstate pipeline companies and retain only contractual rights to inventory balances, 'own, control and hold for resale stored natural gas in an underground formation in the state' " as required by the clear language of K.S.A. 2006 Supp. 79-5a01.

The PVD has timely appealed.

We have jurisdiction of the appeal pursuant to the parties' motions under K.S.A. 20-3017.

This is the third in a trilogy of cases to come before us involving ad valorem property taxation of underground stored natural gas in the state of Kansas. The most recent decision was *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, Syl. ¶ 3, 78 P.3d 419 (2003), which determined that many of the same parties, or those similarly situated to the taxpayers in this case, were not public utilities for Kansas ad valorem taxation purposes.

The earlier case is *Colorado Interstate Gas Co. v. Board of Morton County Comm'rs*, 247 Kan. 654, Syl. ¶ 3, 802 P.2d 584 (1990), which discussed the 1986 amendment to Article 11, § 1 of the Kansas Constitution and held that natural gas owned by public utilities and stored for resale comes within the exemption from ad valorem taxation afforded to merchants' and manufacturers' inventories. Although we must of necessity at times refer to these cases,

the issue before us is primarily that of statutory construction of the explicit language of K.S.A. 2006 Supp. 79-5a01(a), but the previous cases set the stage for the issue we face.

*Factual and Procedural Background Before BOTA*

Many of the facts in this case were stipulated to by the parties, but testimony was also received in the BOTA hearing. We will summarize and at times quote verbatim from the BOTA decision on appeal before us.

The subject matter before BOTA is timely appeals and tax exemption applications filed pursuant to K.S.A. 74-2438 and K.S.A. 79-213 respectively.

These appeals are of the PVD final notices of valuation and ad valorem property tax exemptions, filed by 44 taxpayers for the tax years 2004 and 2005 involving stored natural gas in underground formations in Meade County, Kansas.

The taxpayers include various public utilities, municipal utilities, and natural gas marketing companies located outside the state of Kansas. They do not deliver, sell, trade, or otherwise dispose of natural gas within the state of Kansas and are not certified or regulated as natural gas public utilities by the Kansas Corporation Commission, nor do they engage in any of those activities specified in K.S.A. 2006 Supp. 79-5a01(a)(1) through (7).

The taxpayers do not own facilities in Kansas for the transmission, distribution, or storage of natural gas. None of the taxpayers are authorized to exercise the power of eminent domain in Kansas.

The taxpayers purchase natural gas from various producers and marketers and deliver this gas for storage or deferred delivery to one or more of the following interstate pipelines/common carriers having storage facilities in Kansas and other states: Panhandle Eastern Pipe Line Company; Colorado Interstate Gas Company; Northern Natural Gas Company; and Southern Star Central Gas Pipeline (the "Interstate Pipelines"). The Interstate Pipelines are regulated by the Federal Energy Regulatory Commission (FERC), and natural gas storage and deferred delivery services furnished by the Interstate Pipelines are provided in accordance with and subject to FERC-approved tariffs.

In describing FERC tariffs, the Board found:

"Relevant provisions of the FERC approved tariffs contain specific provisions regarding control and possession of natural gas delivered to the interstate pipelines for storage or deferred delivery. Each of the FERC tariffs includes provisions placing the risk of loss, liability and damages on the interstate pipelines during the period when natural gas is in their control and possession."

The gas that the taxpayers deliver to the Interstate Pipelines is stored somewhere by the Interstate Pipelines in their storage or transportation system, but the same molecules of natural gas that were originally delivered for storage or deferred delivery service are not returned to the taxpayers. The natural gas the taxpayers deliver to the Interstate Pipelines is intended to be inventory for subsequent resale outside the state of Kansas.

The volumes of natural gas that the PVD assessed were computed by allocations, but such allocations do not represent actual volumes of natural gas in particular locations that are attributable to the taxpayers, but rather pro rata allocations of the taxpayers' contractual storage balances.

Four witnesses testified at the BOTA hearing.

Jeff Balfort, Director of Gas Operations for Panhandle Eastern, testified for the taxpayers. He explained that FERC-approved tariffs establish control of the taxpayers' gas delivered for transportation and storage to be in the Interstate Pipelines, and natural gas is used to maintain "line pack" or pressure in the system. Storage is at times used to provide balance in the system if gas pressure is to low or too high as delivery occurs in their system between Texas and Michigan.

Kent Miller, Vice-President of Pricing and Storage for Northern, affirmed Northern is controlled by FERC and that Northern was in possession and control of natural gas from delivery to redelivery. He affirmed the lack of any control in the taxpayers over the gas in Northern's system and explained that underground storage and line pack allowed simultaneous receipt and delivery at opposite ends of its pipeline system. He testified that much of the gas in its system would never be in the vicinity of a storage field as, for example, it might be transported from Canada to a delivery point in Iowa.

Miller explained that when Northern provided information to the PVD for 2004 and 2005, system-wide balances were not specific to Kansas and the volumes stored were theoretical in nature and did not track actual gas stored in any particular storage field. He said the summary of allocations his company provided was a "pro-rata allocation of customer's contractual storage balances."

The taxpayers presented testimony of John R. Wine, a Kansas attorney who has served as Kansas Securities Commissioner and chairman of the Kansas Corporation Commission. Wine's testimony related to the constitutionality of the definition of a "public utility" as defined by K.S.A. 2006 Supp. 79-5a01, which we will not set forth as we do not reach those constitutional issues in deciding this appeal.

John Hughes, Chief of the PVD's State Appraised Property Bureau, testified on behalf of the PVD. Because the PVD believed the 2004 amendments to K.S.A. 79-5a01 made the owner of natural gas in an underground storage facility a public utility by definition, the "stored gas then became taxable per the public utility statute." He explained the process of how the PVD obtained from the Interstate Pipelines the names of storage customers and how information showed "theoretical" volumes of gas through allocations.

The allocation method used by the PVD was not directly tied to specific business activity by the taxpayers in Kansas whose theoretical nexus with Kansas was the delivery to and redelivery from Interstate Pipelines having storage facilities in Kansas and other states.

After receiving briefs from the parties, BOTA, in a nunc pro tunc order to set forth all the parties and docket numbers, made findings of fact which have been previously summarized herein and then set forth the following history of natural gas storage litigation and activity:

"A brief review of legislation and case law leading up to the instant appeal is instructive here. On November 4, 1986, the Kansas electorate amended Article 11, § 1 of the Kansas Constitution to exempt merchants' and manufacturers' inventory from property taxation effective January 1, 1989. L. 1985, ch. 364, § 1. In 1988, the Kansas legislature enacted K.S.A. 1988 Supp. 79-201m to implement

the exemption. There was no mention of public utilities in the legislative enactment. L. 1988, ch. 375, § 2.

"In 1990, the Kansas Supreme Court determined that the merchants' inventory exemption applied to the stored natural gas inventory of public utilities. *Colorado Interstate Gas Co. v. Board of Morton County Comm'rs*, 247 Kan. 654, 802 P.2d 584 (1990). In *Colorado Interstate Gas*, the court found that the interstate pipelines were merchants under K.S.A. 79-201m because they were in the business of buying and selling severed natural gas, which is tangible personal property.

"After the *Colorado Interstate Gas* decision, the Kansas legislature adopted a proposition to amend Article 11, § 1 of the Kansas Constitution to exclude public utilities from the merchant[s'] and manufacture[rs'] inventory exemption. L. 1992, ch. 342, § 1. The amendment was approved by the electorate in November 1992. Consequently, effective January 1, 1993, natural gas inventories of public utilities, including pipelines, became taxable in Kansas. As long as the pipeline companies owned and marketed the natural gas, they reported it to PVD, and PVD valued it and assessed it for purposes of property taxation.

"In 1999, the Federal Energy Regulatory Commission ('FERC') issued an order that unbundled the interstate pipeline industry and prohibited pipelines from owning stored natural gas. See FERC Commission Order 636. As a result, title to the natural gas passed to the pipeline customers upon delivery of the gas to the storage systems.

"In 2003, the Kansas Supreme Court again addressed the issue of taxation of natural gas stored in Kansas pipelines. In *[In re] Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 78 P.3d 419 (2003), the court held that pipeline customers did not 'transport or distribute to, from, through or in the state natural gas in pipes or pipelines' and were not 'engaging primarily in the business of storing natural gas in underground formation.' Based on K.S.A. 2002 Supp. 79-5a01, the court held the pipeline customers were not 'public utilities' and were thus exempt from taxation pursuant to K.S.A. 79-201m.

"New legislation was enacted in 2004 which redefined the term 'public utilities' under K.S.A. 79-5a01(a) to encompass 'every individual, company, corporation, association . . . that now or hereafter own, control, and hold for resale stored natural gas in an underground formation in this state . . . .' See House Substitute for Senate Bill 147. This new legislation is the framework under which the instant case must be decided."

After fully considering the arguments of the parties, the BOTA decision focused on whether the "and" in "own, control and hold for resale" could be construed as an "or" and held the language must be applied as written, in the conjunctive.

BOTA then analyzed K.S.A. 2006 Supp. 79-5a01; pointed to the fact that FERC tariffs establish control of the natural gas in the Interstate Pipelines, not the taxpayers; looked to our language in

*Central Illinois* stating that pipeline customers have "little or no control over where the severed natural gas is stored or for how long"; and stated the legislature was presumed to have been aware of the FERC regulations and the *Central Illinois* decision. See 276 Kan. at 614, 624.

Next, BOTA held, as we have previously set forth, that it must apply the clear language of K.S.A. 79-5a01 and "it would be improper for the Board to find that the Taxpayers, who relinquish possession of natural gas to interstate pipelines and retain only contractual rights to inventory balances, 'own, control and hold for resale stored natural gas in an underground formation in the state.' " The BOTA opinion concluded:

> "The parties have stipulated that the Taxpayers are merchants of natural gas and that gas they delivered to interstate pipelines for redelivery qualifies as inventory. Based on these stipulations and on the ruling herein, the Board finds the subject natural gas is exempt from ad valorem taxation pursuant to K.S.A. 79-201m."

On appeal from this decision, the PVD contends in its brief that BOTA ignored legislative intent, and BOTA's finding that the taxpayers do not "control or hold for resale" stored natural gas in this state is based on a legal fiction.

Anticipating constitutional arguments from the taxpayers which could not be considered by BOTA, the PVD also briefs whether "House Substitute for Senate Bill 147 (L. 2004, ch. 171, §§ 3, 4), is a violation of Art. 11, § 1 of the Kansas Constitution" and whether "Senate Bill 147 violates the Commerce Clause of the United States Constitution." Because we affirm BOTA's decision based on the statutory construction issues presented to it and raised on appeal, we will not consider or comment on any of the constitutional arguments.

We first consider the primary issue of statutory interpretation of the 2004 amendments to K.S.A. 79-5a01, which we summarize as follows.

*The modified definition of a "public utility" requires a taxable entity to "own, control, and hold for resale" the stored natural gas. BOTA rejected the PVD's argument that "and" should be*

*construed as "or." Did BOTA err in its interpretation of the statute?*

We need not repeat here the legislative and case history giving rise to the amended language found in K.S.A. 2006 Supp. 79-5a01(a), which states in applicable part:

"(a) As used in this act, the terms 'public utility' or 'public utilities' means every individual, company, corporation, association of persons, brokers, lessees or receivers that now or hereafter own, control and hold for resale stored natural gas in an underground formation in this state, or now or hereafter are in control, manage or operate a business of:

. . . .

(4) transporting or distributing to, from, through or in this state natural gas, oil or other commodities in pipes or pipelines, or engaging primarily in the business of storing natural gas in an underground formation;

. . . .

"(c) The provisions of subsection (a) as amended by this act shall be applicable to all taxable years commencing after December 31, 2003."

The PVD's arguments that the BOTA ruling fails to follow the legislative purpose of continuing taxation of stored natural gas inventories in Kansas, requiring the "and" in "own, control *and* hold" to be construed to mean "or," gives rise to our long held standards for review involving statutory interpretation which state this is a question of law over which this court has unlimited review. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

With BOTA being a recognized administrative agency with known expertise in taxation matters, we must acknowledge:

" ' " 'The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference . . . . Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps. The determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the court. [Citations omitted.]' " ' " *Trees Oil Co. v. Kansas Corporation Comm'n*, 279 Kan. 209, 226, 105 P.3d 1269 (2005) (quoting *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 317, 22 P.3d 600 [2001]).

In matters of statutory interpretation, we must consider various maxims and are guided by *GT, Kansas, L.L.C. v. Riley County Register of Deeds,* which states:

"Our rules of statutory construction are well known and require us to interpret a statute to give the effect intended by the legislature, *State ex rel. Stephan v. Kansas Racing Comm'n,* 246 Kan. 708, 719, 792 P.2d 981 (1990), construe the statute to avoid unreasonable results, *Wells v. Anderson,* 8 Kan. App. 2d 431, 433, 659 P.2d 833, *rev. denied* 233 Kan. 1093 (1983), and read the statute to give effect, if possible, to the entire act and every part thereof. *KPERS v. Reimer & Koger Assocs., Inc.,* 262 Kan. 635, 643-44, 941 P.2d 1321 (1997). Ordinary words are to be given their ordinary meaning, and a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.,* 236 Kan. 450, 455, 691 P.2d 1303 (1984)." 271 Kan. at 316.

Of importance here is the fact we are considering a taxation statute and we must recognize:

"The right to tax is penal in nature, and this right must be strictly construed in favor of the taxpayer. [Citation omitted.] Tax statutes will not be extended by implication beyond the clear import of the language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. [Citation omitted.] Where there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorably to the taxpayer. [Citation omitted.]" *In re Tax Exemption Application of Kaul,* 261 Kan. 755, 766, 933 P.2d 717 (1997).

Additionally, our review of BOTA's findings of fact is restricted to determining whether the findings are supported by substantial competent evidence. If so, the findings cannot be disregarded or contradicted on appeal. See *In re CIG Field Services Co.,* 279 Kan. 857, 866, 112 P.3d 138 (2005); *In re Tax Appeal of ANR Pipeline Co.,* 276 Kan. 702, 716, 79 P.3d 751 (2003).

The Board clearly held that K.S.A. 2006 Supp. 79-5a01(a) requires a taxable public utility to satisfy all three requirements—own, control *and* hold for resale the natural gas in underground storage in Kansas—and that the taxpayers did not fulfill these three requirements and, therefore, did not meet the statutory definition of public utilities.

The PVD asserts there are two possible interpretations of the phrase "own, control and hold for resale" which would make the taxpayers public utilities. First, that "and" should be construed as

"or," causing the language, although clearly written in the conjunctive, to be read in the disjunctive.

The second and alternative argument, which will later be considered, is that even if "and" means "and," the phrase can be read broadly enough to include the taxpayers in the definition of public utilities.

The PVD's argument that the "and" in the statutory phrase at issue should be read in the disjunctive as "or" ignores our rules of construction that ordinary words must be given their ordinary meaning and we should not add that which is not readily found therein.

The case which the PVD relies on in support of its argument, *McMechan v. Everly Roofing, Heating and Air Conditioning, Inc.,* 8 Kan. App. 2d 349, 351, 656 P.2d 797, *rev. denied* 233 Kan. 1092 (1983), did construe an "and" in a workers compensation statute to mean "or" because to read the statute as drafted would "do violence to the logic of the statute." 8 Kan. App. 2d at 352. The statute there contained multiple definitions of a "part-time employee" and had to be read to provide separate and alternative definitions. Such is not the case in the phrase we are required to construe here. While in *McMechan,* the definition of "part-time employee" in subparagraphs (A) and (B) of K.S.A. 1978 Supp. 44-511(a)(4) had to be considered disjunctively, there is no logical inconsistency in the statutory phrase "own, control and hold for resale." One may own, control, or hold an item or commodity or any combination thereof without logical difficulty. K.S.A. 2006 Supp. 79-5a01 is not logically irreconcilable on its face. *McMechan* is clearly distinguishable factually and does not require us to insert a different word with a different meaning other than what the legislature clearly utilized.

The PVD makes a tortured argument that adding the word "broker" to the statute somehow changes the statute. This argument is not persuasive. Although a broker is normally an agent for a principal, such an individual could be one who owns, controls, and holds for resale natural gas, and under the alternative definitions in the statute at issue, could meet the definition of a public utility.

The most logical and realistic interpretation of the statute is to interpret the plain language exactly as it is written. See *Williamson v. Amrani*, 283 Kan. 227, 231, 152 P.3d 60 (2007) (court must give effect to plain, unambiguous statute as written); *State v. Robinson*, 281 Kan. 538, 539-40, 132 P.3d 934 (2006) (same); see also *State ex rel. Secretary of SRS v. Miller*, 24 Kan. App. 2d 822, Syl. ¶ 2, 953 P.2d 245 (1998) (before we undertake to construe an ambiguous statute, we must first find the statute to be ambiguous). The language we consider is not ambiguous. The phrase "own, control and hold for resale" is construed as written to be read in the conjunctive, and in order to be a public utility under K.S.A. 2006 Supp. 79-5a01, the taxpayers must own, control, *and* hold for resale stored natural gas in an underground storage facility in Kansas.

The PVD's fall-back argument is that even if "and" means "and," requiring the phrase to be read conjunctively, we should still find the taxpayers to be public utilities because they own the gas, they control when and where it is redelivered to them, and they, not the Interstate Pipelines, hold the gas for resale. Such a construction, the taxpayers argue, is one where either the control requirement is removed from the statute or the statute is to be read to treat as utilities all entities who "own *or* control and hold for resale" natural gas in underground storage.

If we were to agree with the PVD's argument that the taxpayers control the gas while the gas is in the possession of the Interstate Pipeline companies, we have in fact prejudged without full consideration the issue of control which is next presented to us. The PVD's fall-back argument is not persuasive and we now turn to the question of control.

*BOTA found that, although the appellees owned the stored natural gas, they did not control it and hold it for resale. As such, the appellees did not meet the definition of "public utility" under K.S.A. 2006 Supp. 79-5a01. Did BOTA err?*

The PVD continues its argument that BOTA erred in finding the taxpayers did not meet the definition of a "public utility" and in this issue focuses on the BOTA finding that the taxpayers did

not control the stored natural gas while it was in the possession of the Interstate Pipelines.

Our standards of review and statutory construction obligations are as we have previously set forth and need not be repeated.

It was stipulated before BOTA that the taxpayers are not state-assessed public utilities under K.S.A. 2006 Supp. 79-5a01(a)(4), but the focus of the PVD now shifts to the "control and hold for resale" language of the statute, specifically the question of control.

It will be helpful at this point to set forth the precise holding of BOTA after it had resolved against the PVD its argument that "and" should be construed to mean "or" and BOTA proceeded to interpret and analyze K.S.A. 2006 Supp. 79-5a01(a). BOTA noted that all words in the statute are to be given effect and then opined:

"Therefore, in order to hold that the Taxpayers are taxable public utilities, the Board must find that the Taxpayers 'own, control *and* hold for resale stored natural gas in an underground formation in the state.'

"There is no serious dispute that the Taxpayers own (or at least hold contractual rights to) storage balances of natural gas contained in underground formations in the state. Nevertheless, whether the Taxpayers actually control and hold the natural gas is doubtful. It is undisputed that tariffs issued by the Federal Energy Regulatory Commission (FERC) establish that control and possession of natural gas delivered to interstate pipelines for transportation and storage is vested in the pipelines until the gas is redelivered to their customers. It is also undisputed that the interstate pipelines cannot track and account for discrete packages or molecules of natural gas delivered for storage. As the Supreme Court said in *Central Illinois*, under federal regulations the pipeline customers have 'little or no control over where the severed natural gas is stored or for how long.' 276 Kan. at 614, 624. When K.S.A. 79-5a01 was amended in 2004 to specifically include the element of control in the definition of 'public utility,' the legislature is presumed to have been aware of the FERC regulations vesting control in the pipelines. The legislature also is presumed to have been aware of the decision in *Central Illinois*, which specifically acknowledged that pipeline customers have little or no control over stored natural gas."

We agree with BOTA's reasoning and ruling and, because the taxpayers in this case are in part identical or similarly situated to the taxpayers in *Central Illinois*, BOTA's reliance on the following statement is justified:

"Also, because the FERC regulations and appellees' contract with Panhandle give appellees little or no control over where the severed natural gas is stored or for how long, there is a rational basis to determine that it would be unfair and, at least arguably, a potential violation of the Commerce Clause to tax the severed natural gas of a public utility that has no dealings with Kansas consumers." 276 Kan. at 624.

The PVD, however, continues to argue that despite and possibly because of contrary language in the FERC-approved tariffs, the taxpayers do, in fact, control the stored natural gas because, in part, they can designate where and when the gas is delivered to and from the Interstate Pipelines.

In response, the taxpayers argue that they do not control and hold the natural gas in question and that absolute control and possession of the natural gas in underground storage is vested in the Interstate Pipelines.

A tariff approved by a regulatory agency conclusively establishes the legal and contractual relationship between the regulated entity and its customers. See *Grindsted Products, Inc. v. Kansas Corporation Comm'n*, 262 Kan. 294, 309-10, 937 P.2d 1 (1997) ("Tariffs are those terms and conditions which govern the relationship between the utility and its customers . . . . A legally established tariff should be construed in the same manner as a statute."); *Torch Operating Co. v. Babbitt*, 172 F. Supp. 2d 113, 123 (D. D.C. 2001); see 64 Am. Jur. 2d, Public Utilities § 61.

The applicable FERC tariffs were admitted as stipulations and contained specific provisions regarding control and possession of natural gas delivered to the Interstate Pipelines. Each placed the risk of loss, liability, and damages on the Interstate Pipelines during the period when the natural gas is in their control and possession.

The language of the tariffs as relating to the relationships of the Interstate Pipelines companies and their customers (taxpayers) is instructive. The Southern Star Central Gas Pipeline tariff states: "Southern Star shall be in control and possession of the natural gas it receives hereunder and responsible, as between Southern Star and Shipper, for any damage or injury caused thereby until the same has been delivered to Shipper at the point of delivery." Similarly, the Colorado Interstate Gas Company (CIG) tariff provides:

"Transporter (CIG) shall be in exclusive control and possession of such gas while it is in Transporter's possession." The relevant portion of the Northern's tariff states: "As between Northern and Purchaser under a Deferred Delivery Agreement, Northern shall be in control and possession of the gas from the time Purchaser delivers gas to Northern at a receipt point, and prior to the time the same shall have been redelivered to Purchaser." This language could not be clearer, and the Interstate Pipelines, not the taxpayers, are in control of and possess the natural gas during the underground storage process.

The PVD makes an unpersuasive argument based solely on the word "deemed" in the Panhandle tariff, which states: "As between Panhandle and Shipper, Panhandle shall be deemed to be in control and possession of the Gas transported and/or stored and/or parked hereunder." The PVD argues that inclusion of "deemed," which is defined in part in Black's Law Dictionary 446 (8th ed. 2004) as treating something as if it were really something else, is a legal fiction employed only to indemnify and protect the taxpayers from liability.

We should point out that the second definition in Black's Law Dictionary for "deem" is "to consider, think, or judge." This is also the definition in Webster's II New College Dictionary 295 (1995), which adds it is "to have an opinion." It is much more logical to simply reason that the phrase "deemed to be" in the Panhandle tariff does not change the clear meaning of the tariffs—that Panhandle, like Southern Star, CIG, and Northern, is in control of the natural gas while in underground storage.

The parties have filed dueling Supreme Court Rule 6.09(b) (2006 Kan. Ct. R. Annot. 44) letters citing us to *Hawley v. Kansas Department of Agriculture*, 281 Kan. 603, 132 P.3d 870 (2006), which each contends supports its position. The *Hawley* discussion of the use of the word "deem" or "deemed" arises in a case involving abandonment and termination of water rights and concludes with the statement "we further conclude that the legislature's chosen language which follows 'shall be deemed abandoned and shall terminate,' " clearly means that by operation of law those water rights shall terminate, regardless of the party's intent. 281

Kan. at 622. *Hawley* is not persuasive to us to change our basic ruling that the Interstate Pipelines are in control of the natural gas at all times while it is within their possession.

This conclusion is bolstered by the testimony the taxpayers presented at the BOTA hearing. Balfort of Panhandle and Miller of Northern both testified that their companies, not the taxpayers, control the natural gas that has been delivered to them for transportation and storage. We need not further repeat the summaries of their testimony set forth earlier in this opinion. Both fully explained the fluid nature of gas in their companies' system; their absolute control over how the gas is received, stored, and redelivered; and the commingled nature of the stream of natural gas in their system, all being recognized in the BOTA decision and opinion.

Based on the language of the FERC-approved tariffs, the stipulations of the parties, and the testimony presented before BOTA, BOTA's finding that the taxpayers do not "control and hold for resale" stored natural gas, and, therefore, do not meet the modified definition of public utilities in K.S.A. 2006 Supp. 79-5a01(a), is supported by substantial competent evidence. BOTA correctly concluded that the taxpayers' natural gas inventory was exempt from ad valorem taxation.

Because we affirm BOTA's rulings below that the taxpayers are not public utilities as defined by K.S.A. 2006 Supp. 79-5a01, and that their natural gas rights and inventories are exempt from taxation under K.S.A. 79-201m as merchants' inventory, none of the remaining arguments raised on appeal by either party need be addressed.

Affirmed.

LUCKERT, J., not participating.

LARSON, S.J., assigned█