No. 128,469

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STONEGATE MOTORPLAZA CONDOMINIUM ASSOCIATION, INC., et al.,
*Appellees*,

v.

HP MOTORPLAZA, LLC, et al.,
*Appellants*.

SYLLABUS BY THE COURT

1.

A condominium is a form of real property ownership in which each owner acquires title and exclusive possession to one unit in a multiunit project, together with an undivided fractional share in the common areas, facilities, and amenities of the building or development. The common elements are held by all condominium owners as tenants in common.

2.

Kansas has a statute that establishes a comprehensive legal framework for condominium ownership, called the Apartment Ownership Act. K.S.A. 58-3101 et seq.

3.

The primary document necessary to establish a condominium, which sets out the ownership interests, obligations, covenants, restrictions, provisions for governance, and other matters is called a declaration.

1

4.

In a condominium, if a developer executes and records a declaration, the developer is subjecting the real property to the provisions of the Apartment Ownership Act. The total real property and incidents thereto submitted in the declaration are called "submitted land."

5.

In a condominium, once the declaration is recorded, the land is a condominium and all of the submitted land outlined in the declaration, with the exception of the individually owned units, is owned by all unit owners in common. A developer cannot create a partial condominium or an almost condominium. The filing of the declaration establishes the ownership rights of the condominium owners, current and future, subject also to provisions of the Apartment Ownership Act.

6.

In a condominium, all unit owners become members of a condominium unit owners association. The condominium owners association manages and maintains the common areas, governs the condominium community, and collects assessments from the members to pay for expenses related to the common areas and for other common expenses.

7.

In a condominium, all convertible lands are part of the common area and facilities until converted into units in the manner prescribed in the Apartment Ownership Act. K.S.A. 58-3101 et seq.

8.

Convertible land must be converted within seven years from the recording of the declaration. Failure to do so prevents the developer from converting the land, and it

2

remains part of the common area owned by the condominium owners as tenants in common.

9.

Expandable land is generally not included in submitted land and therefore is not part of the condominium until it is brought in by filing of an amended declaration and recording a plat of survey and floor plans. Accordingly, the seven year window to develop convertible land does not apply to land identified as part of an expandable condominium.

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Oral argument held February 10, 2026. Opinion filed June 18, 2026. Affirmed in part and reversed in part.

*Joseph W. Booth*, of Booth Family Law, of Lenexa, for appellants.

*Janet Davis Baker* and *Steven H. Mustoe*, of Evans & Dixon, LLC, of Overland Park, for appellees.

*Joshua J. Sipp*, *Emily L. Cipra*, and *Lindsay M. Barash*, of Sandberg Phoenix & von Gontard P.C., of Kansas City, Missouri, for amicus curiae Community Associations Institute.

Before ARNOLD-BURGER, P.J., BRUNS and SCHROEDER, JJ.

ARNOLD-BURGER, J.: Stonegate Motorplaza Condominium Association, Inc., and several of its members (collectively, "Association") filed a petition for declaratory judgment against HP Motorplaza, LLC (Developer), seeking a determination that Developer's rights had expired due to inaction, resulting in undeveloped property becoming commonly owned by the Association. The district court granted summary judgment in favor of the Association. Developer appeals. We affirm the district court's ruling that Developer has failed to develop convertible land within seven years and

3

therefore that land is now wholly owned by the unit owners as common land and is no longer held in fee simple by Developer. But we find, the district court erred in finding the same result as it relates to expandable land. We find that the parcel designated as Tract B does not revert to the unit owners, but remains owned by Developer. Affirmed in part and reversed in part.

## Factual and Procedural History

This case is an example of what happens when glossy marketing promises collide with the reality of Kansas property law. We must examine how the law balances a developer's ambition with the buyer's right to actually get what they were promised and entitled to under the law.

We begin with Developer's plan to build a high-end luxury nonresidential garage condominium for owners to store their exotic, and very expensive, cars. In marketing it to buyers they promised a massive complex with multiple buildings, top-tier amenities, including a 2-mile private driving track. Trackside units were available starting at $280,000 and other units started at $120,000. But after seven years, the development stalled and Developer walked away leaving property worth over $1.4 million in empty dirt. The question becomes who owns that dirt, Developer or the condominium unit owners?

## Analysis

The undisputed issue on appeal is the effect of a developer's failure to develop convertible land and expandable land within seven years.

## I.    CONVERTIBLE LAND

*We review the law related to condominium developments.*

"A condominium is a form of ownership in which each owner acquires title and exclusive possession to one *unit* in a multiunit project, together with an undivided fractional share in the *common elements* '—the common areas, facilities, and amenities of the building or development. The common elements are held by all condominium owners as tenants in common.'" Smith & Kochan, Law of Neighbors, Home Owners Associations, Condominiums § 10:2 (December 2025).

See also Black's Law Dictionary 371 (12th ed. 2024) (condominium is "single real-estate unit in a multi-unit development in which a person has both separate ownership of a unit and a common interest, along with the development's other owners, in the common areas").

Kansas has a statute that establishes a comprehensive legal framework for condominium ownership, called the Apartment Ownership Act (Condo Act), K.S.A. 58-3101 et seq. Although state condominium acts are not uniform, "the basic structure and vocabulary are universal. The primary document is the *Declaration of Condominium*, which sets out the ownership interests, obligations, covenants, restrictions, provisions for governance, and other matters." Law of Neighbors, Home Owners Associations, Condominiums § 10:2. Such is the case in Kansas. This document serves to define the rights among the condominium owners, the condominium association, and the developer. K.S.A. 58-3111. If a developer executes and records a declaration, the developer is subjecting the real property to the provisions of the Condo Act. K.S.A. 58-3103. The total real property and incidents thereto submitted in the declaration are called "submitted land." K.S.A. 58-3102(t).

Once the declaration is recorded, the land is a condominium and all of the submitted land outlined in the declaration, with the exception of the individually owned units, is owned by all unit owners in common. A developer cannot create a partial condominium or an almost condominium. The filing of the declaration establishes the ownership rights of the condominium owners, current and future, subject also to provisions of the Condo Act.

How a developer has designated the property pursuant to the declaration and the Condo Act is critical to understanding the issues in this appeal and the ultimate outcome.

The total real property and incidents thereto submitted in the declaration are called "'[s]ubmitted land.'" K.S.A. 58-3102(t). Generally, if the property contained in the submitted land is not an individually owned unit, it is considered "'[c]ommon areas and facilities.'" K.S.A. 58-3102(g); see K.S.A. 58-3102(m) ("'[l]imited common areas and facilities'"). As already noted, common areas are held by the condominium owners as tenants in common. See K.S.A. 58-3106(a) ("Each apartment owner shall be entitled to an undivided interest in the common areas and facilities as expressed in the declaration."). All unit owners become members of a condominium unit owners association. The association, in accordance with its bylaws, manages and maintains the common elements, governs the condominium community, and collects assessments from the members to pay for expenses related to the common elements and for other necessary expenses. K.S.A. 58-3119.

*We further examine the definition of "convertible land" and its role in the scheme of condominium development.*

Rarely is a development fully established with all available condominium units built and sold at the same time. A developer will begin a phased development with hopes of getting people to buy condominiums within it until all planned units are sold. But to

6

make sure their investment is protected, early owners need to know what the developer intends as far as unit sales and common areas. They have a right to rely on the declaration filed by the developer. They buy this real property with an expectation that a certain number of units and amenities will be developed. They make a significant investment, and they need to rely on written commitments made by the developer to ensure that their investment will not be compromised. Acts like the Condo Act are adopted to protect those interests.

There is another important land designation in the declaration, "convertible land." Convertible land is the "building site for one or more proposed additional condominium units within the submitted land." K.S.A. 58-3102(h). This lets the buyers know what parcels the developer intends to turn into units as the condominium grows. And the Condo Act sets out rules related to these future plans.

"All convertible lands shall be deemed a part of the common area and facilities until converted." K.S.A. 58-3115a. So while early owners may have lots of common area, property described in the declaration, convertible land can be reallocated and altered without their consent as new units are built. K.S.A. 58-3106(g). There is a process set forth in the statute for reallocation. K.S.A. 58-3106(i). The conversion of convertible land is deemed to have occurred when the developer records the amendment to the declaration along with the floor plans and the plat. K.S.A. 58-3115a. But, and this is a key to the first issue in this case, convertible land must be converted within seven years from the recording of the declaration, unless a shorter time is set out in the declaration. K.S.A. 58-3115a.

*Facts related to the convertible land in this case*

On July 17, 2015, Developer recorded a Declaration of Garage Condominium for Stonegate Motorplaza (Declaration) with the Register of Deeds Office in Johnson

7

County, Kansas, under the Condo Act. By submitting the Declaration, Developer established a plan to develop garage condominiums on property that it owned.

Developer described the submitted land as follows:

"<u>Pre-Condominium Plat</u>

"Lot 1, HIGH PERFORMANCE MOTORPLAZA, FIRST PLAT, a subdivision in Aubry Township, Johnson County, Kansas.

"<u>Post-Condominium Plat</u>

"Lots 1, 2, 4, and 5, Units 301 through 312, and Tract A, STONEGATE MOTORPLAZA, a subdivision in Aubry Township, Johnson County, Kansas."

Developer described the convertible land under the Declaration as:

"Lots 1, 2, 4, and 5, STONEGATE MOTORPLAZA, a subdivision in Aubry Township, Johnson County, Kansas."

In sum, relevant here, the plat recorded with the Declaration (the "Condominium Plat") showed: Lots 1, 2, 4, and 5 labeled as "Convertible Land"; Tract A labeled as "Common Area"; and a building containing 12 units numbered 301 through 312.

Consistent with the statute and the Declaration, in December 2015, Developer recorded a resurvey and replat of Lot 2 to reflect the construction of a new building containing additional garage condominium units numbered 201 through 212. Developer also amended the legal description of the submitted land on the Declaration to reflect this added development as follows:

"<u>Pre-Condominium Plat</u>

"Lot 1, HIGH PERFORMANCE MOTORPLAZA, FIRST PLAT, a subdivision in Aubry Township, Johnson County, Kansas.

"Post-Condominium Plat — Phase I

"Lots 1, 2, 4, and 5, Units 301 through 312, and Tract A, STONEGATE MOTORPLAZA, a subdivision in Aubry Township, Johnson County, Kansas.

"Post-Condominium Plat — Phase II

"Units 201 through 212, Building 2 and Lot 2, STONEGATE MOTORPLAZA, SECOND PLAT, a subdivision in Aubry Township, Johnson County, Kansas."

Developer further amended the legal description of the convertible land by removing the language referring to Lot 2, leaving only "Lots 1, 4, and 5, STONEGATE MOTORPLAZA, a subdivision in Aubry Township, Johnson County, Kansas."

The final changes to the Garage Condominium Project occurred in January 2022, when Developer recorded a resurvey and replat of eight units on Lot 2, and further amended the Declaration to reflect the new boundaries of those units. No changes were made to the convertible land.

In September 2023, seven years and nine months since the last designation of convertible land, the Association filed a declaratory judgment petition against Developer. In short, the Association sought a judicial determination that Developer's development rights under the Declaration had lapsed due to the expiration of a seven-year timeline, as well as a determination that the convertible land should remain common areas owned collectively by the owners of the garage condominium units.

Developer admitted that it had not exercised its development rights by constructing additional units on the convertible land. But Developer disagreed that its

9

lack of development efforts transformed the property into common areas as suggested by the Association, arguing that Developer should retain its fee simple ownership of all undeveloped property.

Developer subsequently moved for summary judgment, asking the district court to determine the parties' intent by considering affidavits from the drafters of the Declaration. According to Developer, those affidavits showed that "the intent was simply that the Common Areas would not be automatically transferred as claimed by the [Association]." Rather, because Developer had not formally transferred any of the convertible land to the Association or its members before the expiration of its development rights, it retained fee simple ownership of the property. In addition to the numerous facts included in its summary judgment motion, Developer submitted a separate "Statement of Uncontroverted Facts," with accompanying record citations and exhibits to support those facts.

The Association filed a response to the motion for summary judgment, as well as a cross-motion for summary judgment and supporting memorandum.

The Association's arguments in opposition to Developer's request for summary judgment and in favor of its own cross-motion were essentially the same. First, there was no genuine dispute of material fact that Developer's development rights had expired because it admitted to not developing additional garage condominium units within the seven-year timeline. Second, the Association argued that Developer had recorded the Declaration and Condominium Plat to include the entire property as part of the submitted land, meaning the convertible land became common areas under the terms of the Declaration and the Condo Act. In addition, the Association contended that the affidavits referenced in Developer's summary judgment motion were inadmissible extrinsic evidence and need not be considered by the district court, since the Declaration and applicable statutes were unambiguous.

Developer responded, generally repeating its arguments about the lack of any documents showing a formal transfer of the ownership of the disputed land to the Association. Developer also acknowledged that the Association had controverted many of the facts stated in Developer's summary judgment motion, "showing that large discrepancies still arise around the material facts of this issue," the "biggest fact" being "the question regarding ownership of the land."

Following a hearing, the district court entered an order denying Developer's motion for summary judgment and granting the Association's cross-motion for summary judgment. Because we are not bound by the legal and factual findings of the district court when reviewing its ruling on a summary judgment motion, we will not outline them here. In sum, the district court concluded that because the convertible land was expressly included as the submitted land, it was part of the common areas unless it was converted within seven years. Although "[t]here was no transfer of land," the court found that was "irrelevant" because "[n]one was required." According to the court, "[t]he failure to develop is clearly defined under the [Condo] Act. The Convertible and Expandable Land became common area." The court rejected the need for a deed transfer or amendment, finding that the change in ownership occurred by operation of law.

The first issue we consider on appeal, as raised by the parties, is who owns the convertible land under the Condo Act if it is not converted within seven years?

*Our standard of review is de novo.*

This court's standard of review of a summary judgment ruling is well known.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of

11

law. *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019). When the controlling facts are based on the parties' joint stipulation, an appellate court determines de novo whether the moving party is entitled to a judgment as a matter of law. *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012).

Here, there is no dispute on the key fact:  Developer did not develop the land designated as convertible land within seven years. Instead, we are called upon to interpret the Condo Act to determine the ownership interests of the parties over the undeveloped convertible property now that those development rights have lapsed.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *H.B. v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *In re Wrongful Conviction of Sims*, 318 Kan. 153, 158, 542 P.3d 1 (2024). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022).

We are also asked to interpret the Declaration filed by Developer to determine what guidance it provides regarding the ownership of the land after lapse. Similar principles govern the interpretation of written instruments. *Russell v. Treanor Investments*, 311 Kan. 675, 680, 466 P.3d 481 (2020) ("'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'"). The interpretation and legal effect of written

12

instruments are matters of law, and an appellate court exercises unlimited review. *Netahla v. Netahla*, 301 Kan. 693, 696, 346 P.3d 1079 (2015).

*The position of the parties remains the same on appeal.*

The Association takes the position that the Developer's decision to submit its property to the Condo Act resulted in a *permanent* change in ownership of the subject property that became effective upon the filing of the Declaration. So, in their view, Developer's failure to exercise its development rights resulted in: (1) Developer losing both its ability to further develop the condominium and its status as the sole owner of the undeveloped property; and (2) the Association's members remaining the common owners of the undeveloped property.

In contrast, Developer's position is that designating the property as convertible land under the Declaration and Condo Act was merely a *temporary* change for the duration of the development window, with the potential for common ownership contingent on development occurring, which ended once its development rights expired. In Developer's view, its failure to exercise its development rights resulted in: (1) Developer losing only its ability to further develop the condominium since the undeveloped property never changed ownership; and (2) the Association's members retaining only their individual unit ownership of the garage condominiums.

*We interpret the applicable law as applied to these facts.*

There does not appear to be any dispute for purposes of appeal that the property designated as convertible land in the Declaration was included as submitted land and was therefore subject to the provisions of the Condo Act. In fact, "'[c]onvertible land'" is defined as "one or more proposed additional condominium units within the submitted land." K.S.A. 58-3102(h).

13

Convertible land is not inherently subject to the Condo Act under the Declaration because the Declaration only submits the Garage Condominium Project, which includes submitted land, to the provisions of the statute. But the legal description of the submitted land in Exhibit A and its amendments includes the very same property designated as convertible land on Exhibit A-1. So, under the plain language of the initial Declaration, the definition of submitted land included "Lots 1, 2, 4, and 5, Units 301 through 312, and Tract A." And following the amendments in December 2015, the submitted land also included "Units 201 through 212, Building 2 and Lot 2." As a result, the property designated as convertible land in the Declaration was in fact subject to the provisions of the Condo Act as submitted land.

The statute at the heart of this dispute is K.S.A. 58-3115a, which provides that "[a]ll convertible lands shall be deemed a part of the common area and facilities until converted."

The district court concluded, and the Association agrees, the use of "shall" in this statute is mandatory rather than directive. In other words, convertible lands came into the development as common areas, owned by the Association and remained that way until developed. If not developed, then they maintained their status as common areas owned by the Association.

Developer disagrees. It argues that "shall" is not the operative word in K.S.A. 58-3115a. Instead, it argues that the use of the term "deemed" in the statute makes any designation as common area in convertible land contingent upon development. It agrees that K.S.A. 58-3106(g) provides that, in condominiums containing convertible land, "the undivided interests in the common areas and facilities may be reallocated and altered without the consent of all apartment owners." But this allocation of interests does not happen until the amended Declaration is executed and recorded by the developer and the Association—evidencing development. See K.S.A. 58-3106(h). This transfer of land does

14

not just spring into being, it requires something to be filed evidencing the development of convertible land. Until then, there is no *actual* common ownership in convertible land.

Developer supports its argument by focusing on the term "deemed" in the statute. It contends that when K.S.A. 58-3115a provides "[a]ll convertible lands shall be deemed a part of the common area and facilities until converted," it is setting up a statutory fiction. By using the term "deemed" it is conditioning the status of common area "on a valid and timely right to convert." In other words, it is only to be treated the same as common area when it is converted, establishing a method to reallocate the interests of the existing condo owners.

Developer relies on *In re Director of Property Valuation*, 284 Kan. 592, 605, 161 P.3d 755 (2007), to support its position that "the term 'deemed' creates a legal fiction—something treated as true for a specific legal purpose but not reflective of actual status."

> "[T]he court noted that 'deemed' means to treat something 'as if it were really something else,' often to serve a limited statutory function. Accordingly, the 'deemed' designation in § 58-3115a does not transfer fee simple ownership of Convertible Land. It simply facilitates potential future development within a fixed window of time.
>
> . . . .
>
> "Once the seven-year statutory period lapses—as in the case of the [Garage Condominium Project]—the [Developer's] right to convert ceases 'as a matter of law.' Without a continuing legal right to convert, the statutory condition underpinning the 'deemed' common area status vanishes. Consequently, K.S.A. § 58-3106(g) and (h) no longer apply: no new units can be created, and no common area interests can be reallocated to hypothetical, now-barred units."

In further support of its position that it is merely a legal fiction that convertible land is treated as common area from the moment of its inclusion as submitted land in the Declaration, Developer points to the fact that unlike other common areas, in the case of

15

convertible land, K.S.A. 58-3115a requires the developer to be liable for all the taxes and expenses on the property and the benefit of any improvements would inure to the developer. This makes it different than other common areas where the Association is responsible for the expenses. See K.S.A. 58-3106.

Developer argues that since the statute does not expressly transfer ownership of the nonconverted land to the Association upon its failure to convert, we must turn to the Declaration—the only document that binds the parties—to see if it provides any guidance. We agree that the language in the Declaration will control as long as it is not contrary to the Condo Act. In fact, K.S.A. 58-3115a, which sets out a process by which a declarant can convert convertible lands provides that any conversion is "subject to any restrictions and limitations which the declaration may specify."

Unfortunately, an examination of the plain language of the Declaration does not support Developer's position. We begin with the recital of ownership.

"RECITALS:
"A.     The Declarant is the fee simple owner of the *Submitted Land* (herein defined) and the Expandable Land (defined below), and all improvements and appurtenances thereto.
"B.     The Declarant does hereby establish a plan for the ownership in fee simple of real property, consisting of the area or space contained in each Unit (defined below) in the Garage Condominium Project (defined below), and a plan for the co-ownership by the separate Unit owners *of all of the remaining property* within the Garage Condominium Project *as tenants in common*." (Emphases added.)

As already noted, the "Convertible Land" was included in the "Submitted Land" which was part of the Garage Condominium Project and made subject to the Condo Act.

16

Common areas (called "Common Elements" in the Declaration) are specifically defined in the Declaration.

> "Section 1.8. 'Common Elements' shall mean the entire Garage Condominium Project, but excluding the Units. Common Elements, as further described in Section 2.12 below, are one and the same as the 'common areas and facilities' referenced in the Act.
>
> . . . .
>
> "Section 2.12. <u>Common Elements</u>. The Common Elements shall mean the entire Garage Condominium Project, excluding the Units, but specifically including, without limitation, the following areas intended for the common use and benefit of all Owners:
>
>> (a)  The Submitted Land.
>>
>> . . . .
>
> The Common Elements shall be owned by the Owners collectively. No Owner or any other Person shall bring any action for partition or division of any part of the Common Elements, unless the Garage Condominium Project has been removed from the provisions of the Act as provided in the Act and this Declaration."

Again, as already noted, the "Convertible Land" was included in the "Submitted Land" and made subject to the Condo Act. It goes on to provide:

> "Section 10.3. <u>No Ownership Interest in Common Elements</u>. The Declarant, in its capacity as the Declarant (as opposed to its capacity as an Owner), shall have no ownership interest in *the Common Elements* and, except as expressly provided in this Declaration, shall have no other rights to or in the *Common Elements*." (Emphasis added.)

Developer argues in its appellate brief that the Declaration reinforces its conclusion that "after the expiration of development rights, the unconverted land reverts fully to its pre-existing legal status:  fee simple ownership by the Declarant. Neither the Act nor the Declaration provides for automatic vesting of this land in the unit owners or the Association."

17

But the Declaration Recital establishes the preexisting legal status of all the submitted land with the exception of the individually purchased units under the Declaration is as tenants in common. Yet, Developer claims that "Section 2.15 [of the Declaration] outlines the Declarant's reserved rights regarding Convertible Land." Yet, the only pertinent part of Section 2.15 states:

> "(f) The Declarant reserves the right to create *Limited Common Elements* Within the Convertible Land and the Garage Condominium Project.
> "(g) Upon the development of Units on the Convertible Land, the Declarant and the Association (acting with the approval of the Board of Directors) shall update and amend Exhibit A and A-1 to this Declaration to add such Units to the Garage Condominium Project." (Emphasis added.)

"Limited Common Elements" are specifically and uniquely defined in the Declaration at § 2.13 as items that are designated for specific units to which the unit owner has a specific easement. And as already noted the convertible land was already part of the Garage Condominium Project.

A written instrument will not be found to be ambiguous unless two or more meanings can reasonably be construed from the contract. The court will not strain to find an ambiguity where, in common sense, there is none. *Greer v. Eby*, 309 Kan. 182, 192-93, 432 P.3d 1001 (2019). There is no ambiguity in the Declaration. It is clear. The fee simple owners of the garage units within the condominium are also owners of all the remaining property identified in the Garage Condominium Project as tenants in common. Under the Condo Act, a developer no longer has the right to convert that property to individual units, so it remains under the control of the condo unit owners with management by the Association.

This also brings the Declaration in harmony with the Condo Act. Consistent with this interpretation, the Condo Act also allows land that is voluntarily removed from the

18

Act by the recorded agreement of the unit owners. Once it is voluntarily removed, it is deemed to be owned in common by the remaining unit owners. K.S.A. 58-3116.

In short, the district court correctly concluded that the convertible property became and remained common property under the terms of the Declaration and the Condo Act. Accordingly, we affirm that portion of the summary judgment order.

II.     EXPANDABLE LAND

Having already described the purpose of the Condo Act, its definition of submitted land and convertible land, we turn to another type of land implicated in the Condo Act, expandible land. The Condo Act does not specifically use the term expandable land, but it does describe what is called an "[e]xpandable condominium." K.S.A. 58-3102(l). This means a "condominium to which additional real property may be added in accordance with the provisions of the declaration" and the Condo Act. K.S.A. 58-3102(l). Unlike convertible land, expandible condominium is not, by definition, included in the submitted land. K.S.A. 58-3102(h), (l). But if there is any expansion of the condominium, it is deemed to have occurred at the time the plat and floor plans are recorded together with an amendment to the declaration, with a legal description of the land added. K.S.A. 58-3115b.

At the time Developer filed the Declaration, it also recorded Tract B and labeled it as expandable land. There is no dispute that the expandable land was never expanded into units. But the Association argues this land is also common land subject to the seven-year development window in K.S.A. 58-3115a.

The Declaration is the sole document that outlines what land a developer is submitting to the Condo Act. K.S.A. 58-3103. So we turn to the Declaration to see if

19

Tract B is included in the land Developer made subject to the Condo Act, in other words was this land included in Developer's declaration of submitted land.

Section 1.18 defines "'Garage Condominium Project'" as collectively, the submitted land. Section 1.36 describes the submitted land as that land described in Exhibit A. And finally, Section 2.2 of the Declaration specifically submits "*the Garage Condominium Project* to the provisions of the Act." (Emphasis added.) But by the plain language of the Declaration, expandable land is not part of the submitted land, nor is it part of the Garage Condominium Project. Tract B is not listed in Exhibit A.

Instead, expandable land as set out in the Declaration "shall mean that certain land legally described on Exhibit A-2 attached hereto and incorporated herein by reference, located in Johnson County, Kansas and all incidents thereto and interests therein." Exhibit A-2 then describes the expandable land as "Tract B, STONEGATE MOTORPLAZA, a subdivision in Aubry Township, Johnson County, Kansas."

So why even include the legal description of expandable land in the Declaration if it is not subject to the Condo Act as submitted land? Because K.S.A. 58-3111 also governs the information that must be contained in a declaration, including a "[d]escription of the land submitted to the provisions of this act," and "[i]f the condominium is an expandable condominium . . . [a] legal description of all land that may be added to the condominium." The Declaration in this case clearly contains both descriptions, as seen in the definitions of submitted land and expandable land, as well as Exhibits A and A-2.

Similarly, K.S.A. 58-3115(c) provides that "[t]here shall be recorded simultaneously with the declaration one or more plats of survey showing the legal description, the location and dimensions of the submitted land, any convertible lands within the submitted land and *any additional land if the condominium is an expandable*

20

*condominium*." (Emphasis added.) The plain language of K.S.A. 58-3115(c), separates the concept of "additional land" from "submitted land." It is undisputed that Developer fulfilled this statutory requirement because the Association agreed that Developer recorded the Condominium Plat at the same time it recorded the Declaration.

In addition, K.S.A. 58-3115(a) and (c) required any such amendments to be recorded. Although the inclusion of Tract B as expanded land on the Condominium Plat may have been enough to comply with the Condo Act, it is undisputed that Developer never amended Exhibits A and A-2 to reflect its desire to add any portion of the expandable land, which only refers to Tract B, to the submitted land.

The Condo Act also provides that if a developer does not exercise its option to expand the condominium within seven years, expansion rights "shall expire." K.S.A. 58-3111(13)(c). The district court found that the Condo Act used "shall" as a "mandatory term" when referring to the seven-year timeline, meaning Developer "had seven years from recordation of the Declaration to convert the Expandable Land into units or facilities. Failure to do so, as happened here, results in the development rights having expired." Although "[t]here was no transfer of land," the court found that was "irrelevant" because "[n]one was required." According to the court, "[t]he failure to develop is clearly defined under the [Condo] Act. The Convertible *and* Expandable Land became common area[,]" which the court found was "similar to a party being [disseized] automatically through a statute of limitations in adverse possession cases." (Emphasis added.)

But what the district court missed was the fact that there is no similar provision to K.S.A. 58-3115a ("[a]ll convertible lands shall be deemed a part of the common area and facilities until converted") related to expandable land. Because expandable land here was not submitted land or convertible land it was not deemed part of the common area to be held by all unit owners as tenants in common. It was never common area to begin with, it did not become common area when Developer failed to develop it.

21

Accordingly, we reverse the district court's summary judgment ruling, with regards to Tract B. Based on the clear language of the Declaration, Tract B could not "remain" under common ownership if it never took on that status in the first place.

Affirmed in part and reversed in part.